# **EXHIBIT 2**

## AGREEMENT OF TRANSFER AND ASSUMPTION

AGREEMENT OF TRANSFER AND ASSUMPTION made this 5th day of June, 1992 by and between Cyprus Talc Corporation, a Delaware corporation ("Newco"), and Cyprus Mines Corporation, a Delaware corporation ("Cyprus").

WHEREAS Cyprus wishes to sell and transfer to Newco, and Newco desires to acquire from Cyprus, all of the "Transferred Assets" (as defined below); and

WHEREAS, Cyprus, Cyprus Minerals Company, a Delaware corporation, and RTZ America Inc., a Delaware corporation, have entered into a Stock Purchase Agreement dated as of June 5, 1992 ("the Stock Purchase Agreement").

NOW THEREFORE, in consideration of the mutual covenants herein set forth:

1. *Definitions*. All capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Stock Purchase Agreement.

2. *Purchase and Sale*. Cyprus, in accordance with and subject to the terms and conditions of this Agreement of Transfer and Assumption, agrees to sell, assign, transfer, convey and deliver to Newco, and Newco agrees to purchase, accept, acquire and take delivery of the Transferred Assets, all for the consideration specified in Section 8.(b)(ii), as they exist at the Newco Closing (as defined below), in each case free and clear of any Encumbrances except Permitted Exceptions. For purposes of this Agreement of Transfer and Assumption, the "Transferred Assets" shall mean all of Cyprus' right, title and interest in and to the assets, properties, rights and businesses of every type and description used primarily in or relating primarily to Cyprus' talc business (the "Talc Business"), whether real, personal or mixed, tangible or intangible, whether currently in use or idle, fixed or unfixed, accrued, absolute, contingent or otherwise, wherever located and including, without limitation, all of the right, title and interest of Cyprus in the assets listed in paragraphs (a) through (l) below (but excluding the assets described in Section 3).

   (a) Cyprus' record and beneficial ownership of all of the issued and outstanding shares of capital stock of Cyprus Industrial Minerals Corporation, a Nevada corporation; Cyprus Windsor Minerals Corporation, a Vermont corporation and its subsidiary Cyprus Western Source Corporation, a California

corporation; and Green Mountain Talc Corporation, a Delaware corporation; and Cyprus' record and beneficial ownership of 95% of the issued and outstanding shares of capital stock of DIMTA SA, a company organized under the laws of Spain, and Cyprus' record and beneficial ownership of 60% of the issued and outstanding shares of capital stock of Nihon Mistron Company, Ltd., a Tokyo, Japan corporation (collectively, the "Shares");

(b) the real property and mineral rights of the Talc Business and the records thereof;

(c) All current assets, including without limitation, all cash and, to the extent that the same may exist, all certificates of deposit, accounts receivable, claims, prepaid expenses, deferred charges, advances and deposits;

(d) All talc inventories of finished products, work-in-progress and raw materials of the Talc Business;

(e) All talc facilities and equipment of the Talc Business;

(f) All business machines, furniture and fixtures, supplies, office equipment, vehicles and other tangible personal property used primarily in or relating primarily to the Talc Business;

(g) All trademarks and other marks and, to the extent that the same may exist, all inventions, patents and any copyrights, and registrations thereof, all applications for any of the foregoing and all trade names;

(h) All right, title and interest in, to and under all contracts, agreements, leases, licenses, permits, orders, commitments of understandings to which Cyprus is a party or entitled to any right or interest;

(i) All trade secrets, processes, specifications, designs, drawings and technology which relate primarily to the Talc Business;

(j) All contracts, books, records and other data relating primarily to the Talc Business;

(k) All causes of action and claims of any kind of Cyprus against any other party related primarily to the Talc Business; and

-2-

(1) All other assets and rights of the Talc Business as a going concern.

3. <u>Excluded Assets</u>. Notwithstanding any provision of this Agreement of Transfer and Assumption to the contrary, the properties and assets (the "Excluded Assets") described in the attached Exhibit A, which by this reference is incorporated herein, shall be excepted herefrom and reserved to and retained by Cyprus.

4. <u>Assumed Liabilities</u>. Subject to the terms and conditions of this Agreement, in connection with its purchase of the Transferred Assets at the Newco Closing, Newco shall assume and shall perform, pay and discharge all of the liabilities or obligations, whether known, unknown, contingent or otherwise primarily relating to the Transferred Assets, including, without limitations, liabilities and obligations, whether known, unknown, contingent or otherwise arising out of transactions or events occurring on or prior to the Closing and relating primarily to the Transferred Assets (the "Assumed Liabilities").

5. <u>Excluded Liabilities</u>. Notwithstanding any provision of this Agreement of Transfer and Assumption to the contrary, Newco shall not be responsible for and shall not assume any of the following liabilities or obligations, whether known, unknown, contingent or otherwise (the "Excluded Liabilities") which are hereby expressly excluded from the definition of Assumed Liabilities: (i) any liabilities or obligations arising out of or relating to the Excluded Assets, (ii) any liabilities or obligations arising out of the Montana net proceeds tax liability, (iii) any liabilities arising out of or relating to properties disposed of by the Talc Business prior to the Newco Closing, and (iv) any liabilities or obligations (including costs and expenses associated therewith) arising from any litigation arising out of or relating to the operation of the businesses of the Companies prior to the Closing as to which Buyer has given written notice to Seller within one year of the Closing Date.

6. <u>Non-Assignable Contracts</u>. Nothing herein shall be deemed to constitute an assignment or an attempt to assign any contract, agreement, lease, license, permit, order, or commitment or understanding to which Cyprus is a party if the attempted assignment thereof without the consent of the other party thereto would constitute a breach thereof or affect in any way the rights of Cyprus thereunder and such consent has not been given; but Cyprus will cooperate with Newco in any reasonable arrangement designed

to provide for Newco the benefits under any such contract or agreement including, without limitation, the enforcement, for the benefit of Newco, of any and all rights of Cyprus against such other party or parties thereto arising out of any breach or cancellation thereof by such other party or parties or otherwise.

7. <u>Closing</u>. The closing of the transactions provided for herein (the "Newco Closing") will take place at the offices of Sullivan & Cromwell at 125 Broad Street, New York, New York, immediately prior to the Closing provided for in the Stock Purchase Agreement.

8. <u>Transactions at the Newco Closing</u>. (a) At the Newco Closing, Cyprus will deliver to Newco the following:

(i) stock certificates evidencing the Shares, in each case endorsed in blank or with an executed blank stock power attached, and in form suitable for transfer of valid title thereto to Newco or its assigns, free and clear of any Encumbrances;

(ii) such deeds, bills of sale, endorsements, certificates, instruments of assignment and such other instruments of conveyance and transfer reasonably satisfactory in form and substance to vest in Newco good and marketable title to the Transferred Assets, in each case, free and clear of any Encumbrances other than Permitted Exceptions;

(iii) such instrument of retention reasonably satisfactory in form and substance as shall be necessary for Cyprus to retain the Excluded Liabilities.

(b) At the Newco Closing, Newco will deliver to Cyprus the following:

(i) such instruments of assumption reasonably satisfactory in form and substance to Cyprus as shall be necessary for Newco to assume all of the Assumed Liabilities;

(ii) Stock certificates evidencing all shares of Common Stock of Newco.

9. <u>Representations and Warranties of Cyprus</u>. Cyprus hereby represents and warrants to Newco that it has good and marketable title or possessory rights to all of the Transferred Assets and that at the Newco Closing, good and

-4-

marketable title or possessory rights to all of the Transferred Assets, free and clear of any Encumbrances other than Permitted Exceptions, will be transferred to Newco.

10. <u>Attorney-in-Fact</u>.  Cyprus hereby makes, constitutes and appoints Newco the true and lawful attorney-in-fact of Cyprus, with full power of substitution, in the name and stead of Cyprus, but on behalf and for the benefit of Newco, to demand and receive any and all of the Transferred Assets, and to give receipts and releases for and in respect of the same, and any part thereof, and from time to time institute, prosecute, appear in, defend and appeal in the name of Cyprus, or otherwise, at the expense and for the benefit of Newco, any and all actions, suits and proceedings at law, in equity or otherwise, which Newco may deem proper in order to collect or reduce to possession any of the Transferred Assets, or enforce any claim or right of any kind hereby conveyed or assigned and transferred, or to resist or defend against any claim, or assertion relating to an Assumed Liability and to do all acts and things in relation to the Transferred Assets or the Assumed Liabilities which Newco shall deem desirable.

11. <u>Mail</u>.  Cyprus further authorizes Newco, its successors and assigns, to receive and open all mail, telegrams and other communications, and all express and other packages addressed to Cyprus under the name of "Cyprus Industrial Minerals Company" and to retain such of the same as relate to the Transferred Assets and Newco hereby agrees to forward to Cyprus with reasonable dispatch all other mail, telegrams, communications, express and other packages addressed to Cyprus.  The foregoing shall constitute a full authorization to the postal authorities, all telegraph and express companies, and all other persons to make delivery of such items to Newco, its successors and assigns.

12. <u>Further Assurance</u>.  Upon written request of Newco, Cyprus shall from time to time execute and deliver to Newco, without further consideration, such other and further instruments of conveyance, assignment and transfer as Newco may reasonably request for the more effective conveyance, assignment and transfer to Newco of any of the Transferred Assets.

13. <u>Indemnification</u>.  (a) Cyprus shall indemnify and hold Newco harmless from and against all Damages caused by, resulting or arising from (i) any Breach of the representations or warranties of Cyprus set forth in Section 9 hereof, or (ii) the Excluded Liabilities.

(b) Newco shall indemnify and hold Cyprus harmless from and against all expenses, including reasonable legal expenses, incurred by Cyprus in any litigation against Newco in which Newco is found to have breached any of its obligations under this Agreement.

14. **Miscellaneous**.  This Agreement of Transfer and Assumption shall be governed by, and construed in accordance with, the law of the State of New York without reference to choice of law principles, including all matters of construction, validity and performance.  This Agreement of Transfer and Assumption contains the entire understanding of the parties hereto with respect to the subject matter contained herein, supersedes and cancels all prior agreements, negotiations, correspondences, undertakings and communications of the parties, oral or written, respecting such subject matter.  This Agreement may be amended only by a written instrument executed by the parties.  This Agreement may be executed in one or more counterparts and each counterpart shall be deemed to be an original.

IN WITNESS WHEREOF, the parties have duly executed this Agreement of Transfer and Assumption on the day and year first above written.

CYPRUS TALC CORPORATION

By: _____

CYPRUS MINES CORPORATION

By: _____

-7-

EXHIBIT A

## Excluded Assets

1. The Hamm Underground Mine Property