# **EXHIBIT 13**

**NEAL ■ GERBER ■ EISENBERG**

Angela R. Elbert
Attorney at Law

Tel 312.269.5995
Fax 312.578.8396
aelbert@ngelaw.com

September 18, 2015

**VIA FEDERAL EXPRESS**

Denise H. Houghton
General Counsel
Johnson & Johnson
One Johnson & Johnson Plaza
New Brunswick, New Jersey 08933

Re:   **Indemnification Demand Notice for Ovarian Cancer Lawsuits**

Dear Ms. Houghton:

I am coverage counsel for Imerys Talc America, Inc.'s f/k/a Luzenac America, Inc. ("Imerys"), and John Green is coverage counsel for Rio Tinto America, Inc. ("Rio Tinto"). We are in receipt of your July 10, 2015 letter in which Johnson & Johnson ("J&J") states that it does not agree to the terms of Imerys' June 23, 2015 indemnification demand. Please consider this letter to also constitute a demand from Rio Tinto for indemnification from J&J.

Please be advised that Imerys and Rio Tinto disagree with J&J's position. The 1989 Stock Purchase Agreement (the "1989 SPA") between J&J and Cyprus Mines Corporation ("Cyprus"), the 1989 Talc Supply Agreement between Windsor Minerals, Inc. and J&J, the 2011 Material Supply Agreement between Luzenac America, Inc. and J&J, and other supply agreements all contain indemnity provisions relating to third-party claims arising out of J&J's use or sale of talc-containing products. J&J also has indemnity obligations under common law. In 1992, Cyprus and RTZ America, Inc. entered into a stock purchase agreement that resulted in the transfer of all rights and subsidiaries acquired from J&J in the 1989 SPA to RTZ America, Inc. The company holding those rights and subsidiaries at that time was Cyprus Talc Corporation. RTZ America, Inc. subsequently changed the name of Cyprus Talc Corporation to Luzenac America, Inc. In 2011, Rio Tinto America, Inc. and Mircal S.A. entered into a stock purchase agreement that resulted in the transfer of all rights and subsidiaries acquired from J&J in the 1989 SPA to the Imerys Group. Imerys subsequently changed the name of Luzenac America, Inc. to Imerys Talc America, Inc. Imerys, therefore, has the indemnity rights contained in the J&J agreements, as well as under common law.

In light of parties' disagreement, however, we recommend that the parties enter into a tolling agreement to preserve all claims and defenses relating to Imerys' and Rio Tinto's indemnification demand. I'm sure you will agree that it is in the parties' best interests, at the present time, to defer or avoid litigation relating to indemnification for the talc/ovarian cancer litigation. We have attached a draft agreement for your review and execution.

**NEAL, GERBER & EISENBERG LLP**

Denise H. Houghton
September 18, 2015
Page 2

Imerys and Rio Tinto also request that J&J (i) provide copies of all general liability and other insurance policies that may provide coverage for the talc/ovarian cancer lawsuits and (ii) cooperate with Imerys and Rio Tinto in their attempts to obtain coverage thereunder. As you may recall, the 1989 SPA provides that J&J "agrees to use its best efforts to make such coverage and policies (including excess coverage policies) available to Cyprus, Windsor and Western, and their affiliates, up to the limits specified in such policies, and to cooperate with Cyprus and its affiliates in making claims against such policies." (1989 SPA, §5.9.) As the respective successors in interest to Cyprus' rights under the 1989 SPA, we hereby assert our rights to such cooperation and such policies.

Please confirm in writing no later than ten (10) business days that J&J will agree to enter into a tolling agreement with respect to Imerys' indemnification demand and that J&J will provide copies of all insurance policies and cooperate with our efforts to make claims against such policies, as requested herein. We also demand that J&J provide notice to all potentially applicable insurers of Imerys' and Rio Tinto's indemnification demand and provide us with copies of such notices.

We look forward to hearing from you.

Sincerely,

Angela R. Elbert

Sincerely,

John D. Green

cc: Ryan Van Meter, Imerys
    Pat Walker, Rio Tinto
    Zsofia Porter, Rio Tinto
    Stephen Wojcik, Zurich
    Michael Marick, Zurich coverage counsel
    Kevin Spencer, XL
    Keith Moskowitz, XL coverage counsel
    Ted O'Toole, HDI-Gerling
    Peter Hoenig, HDI-Gerling coverage counsel
    Ashley Tizabi, Truck Insurance Exchange
    Irene Yesowitch, Truck Insurance Exchange coverage counsel
    Jeffrey Ward, Resolute Management, Inc.
    Beth Knechtel, Old Republic Insurance Company
    Matthew E. Schweiger, Old Republic Insurance Company coverage counsel
    John Bess, Fireman's Fund Insurance Co.
    Sebastian Gondek, Travelers Insurance Company

## TOLLING AGREEMENT

This Tolling Agreement ("Agreement") is dated as of September ___, 2015 (the "Effective Date"), by and between Imerys Talc America, Inc. f/k/a Luzenac America, Inc. ("Imerys"), on behalf of itself and all of its affiliated entities, subsidiary entities, parent entities, and insurers, and Rio Tinto America, Inc. ("Rio Tinto") on behalf of itself and all of its affiliated entities, subsidiary entities, parent entities, and insurers on the one hand, and Johnson & Johnson ("J&J"), on behalf of itself and all of its respective affiliated entities, subsidiary entities and parent entities, on the other hand. Imerys, Rio Tinto, and J&J are referred to herein individually as "Party" or collectively herein as the "Parties."

## RECITALS

**WHEREAS**, on or about January 6, 1989, J&J and Windsor Minerals, Inc. ("Windsor") entered into a talc supply agreement (the "Talc Supply Agreement");

**WHEREAS**, section 11 of the Talc Supply Agreement states that J&J "shall indemnify, defend and hold harmless [Windsor], and its affiliates, and each of their respective directors, officers, employees, and agents from and against all liabilities arising out of any product liability-based claim, suit, demand or cause of action directed against [Windsor] or any of [Windsor's] affiliates: (i) arising out of the sale of cosmetic talc products to consumer markets, which products were manufactured by [Windsor] prior to [January 6, 1989]; or (ii) for which [J&J] is directly or indirectly responsible as a result of [J&J's] possession, use or processing of Talc delivered to [J&J] pursuant to this Agreement, or as a result of [J&J's] manufacture, shipment and sale of Talc-containing product (including without limitation, baby powder and adult powder) derived from Talc delivered to [J&J] pursuant to this Agreement …" (the "Talc Supply Indemnity Obligation");

**WHEREAS**, on or about January 6, 1989, J&J and Cyprus Mines Corporation ("Cyprus") entered into a stock purchase agreement (the "1989 SPA");

**WHEREAS**, section 11.2 of the 1989 SPA states that J&J "agrees to indemnify and hold harmless Cyprus from and against any and all claims, demands, penalties, suits, proceedings, judgments, losses, liabilities, damages, costs and expenses of every kind and nature (including, but not limited to, reasonable attorneys' fees and any and all related litigation costs and expenses arising after Closing from or as a consequence of any such proceeding described in this Section 11.2, including such attorneys' fees and costs incurred in connection with pursuing claims under this Section 11.2) (collectively referred to in this Section 11.2 as "Costs") imposed upon or incurred by Cyprus or its affiliates as a result of or in connection with or arising out of: … (iv) any product liability-based claim, suit, demand or cause of action directed against Cyprus, Windsor or Western or any of their affiliates arising out of the sale of talc or talc-containing products manufactured by Windsor, Western, J&J or the affiliates of Windsor, Western or J&J, prior to Closing …" (the "SPA Indemnity Obligation");

**WHEREAS**, on or about January 1, 2011, J&J and Luzenac America, Inc. ("Luzenac") entered into a material supply agreement (the "2011 Material Supply Agreement");

**WHEREAS**, paragraph 6 of the 2011 Material Supply Agreement states that J&J "shall indemnify, defend and hold harmless [Luzenac] for any third party claims brought against [Luzenac] based on the use of Materials by [J&J]" (the "Material Supply Indemnity Obligation");

**WHEREAS**, on or about June 5, 1992, Cyprus and RTZ America, Inc. entered into a stock purchase agreement (the "1992 SPA"), and RTZ America, Inc. subsequently changed the name of its U.S. talc operations to Luzenac America, Inc.;

**WHEREAS**, on or about June 10, 2011, Rio Tinto and Mircal S.A. entered into a stock purchase agreement (the "2011 SPA"), and Mircal S.A. subsequently changed the name of its U.S. talc operations from Luzenac America, Inc. to Imerys Talc America, Inc.;

**WHEREAS**, since 2009, numerous lawsuits have been filed against Imerys in various jurisdictions alleging bodily injury as a result of long-term use of certain talc-based body powders manufactured by J&J with talc delivered by Imerys, Luzenac, Cyprus, or Windsor in accordance with talc supply agreements with J&J (the "Talc Lawsuits");

**WHEREAS**, on June 23, 2015, Imerys provided written notice of its demand for indemnification from J&J under the Talc Supply Agreement, the 1989 SPA, the 2011 Material Supply Agreement, and common law (the "Imerys Indemnity Demand");

**WHEREAS**, on July 10, 2015, J&J provided a written response in which J&J denied that it had any indemnity obligation to Imerys;

**WHEREAS**, on August __, 2015, Rio Tinto provided written notice of its demand for indemnification from J&J under the Talc Supply Agreement, the 1989 SPA, the 2011 Material Supply Agreement (the "Rio Tinto Indemnity Demand," and together with the Imerys Indemnity Demand, the "Indemnity Demand"); and

**WHEREAS**, Imerys, Rio Tinto, and J&J believe that it is in their best interests, at the present time, to defer or avoid litigation between them regarding the Indemnity Demand;

**NOW, THEREFORE**, for and in consideration of the mutual promises and representations herein set forth, the Parties agree as follows:

1. Imerys, Rio Tinto, and J&J agree that the period between the Effective Date and the Termination Date shall be referred to as the "Tolling Period." The Tolling Period shall not be included in determining the applicability of, and cannot be asserted or relied upon by J&J as a basis for computing the running of time for purposes of, any statutes of limitation, statutes of repose, the doctrine of laches, or any other defense or time limitation, whether statutory, equitable, contractual, or otherwise, in connection with any claim, action or proceeding brought by Imerys and/or Rio Tinto arising out of, or relating to, the Indemnity Demand.

2. Nothing in this Agreement shall limit or prevent any Party to this Agreement from filing any claim, action, suit, demand, counterclaim, cross-claim, cross-demand or defense against the other that is unrelated to the Indemnity Demand.

3. Neither the execution of this Agreement nor anything contained herein is intended to be, or shall be construed to be, an admission by any Party as to liability to anyone, now, in the past or in the future, or an admission of the existence of facts upon which liability could be based.

4. No Party shall file a lawsuit against another Party arising out of or relating to the Indemnity Demand during the Tolling Period.

5. This Agreement may be terminated by any Party upon fourteen (14) days' written notice to the undersigned representatives of the Parties, such period commencing for each such Party on the date of receipt of such notice. The Tolling Period shall immediately expire upon termination of this Agreement.

6. At the termination of this Agreement, the running of any and all statutes of limitations, statutes of repose, or any other defense or time limitation, whether statutory, equitable, contractual, or otherwise shall resume and shall be added to whatever time had already run on such statute or period prior to the Tolling Period.

7. Nothing in this Agreement shall revive any claim, action, suit, demand or cross-demand that is or would be barred under any statute or law as of the execution date of this Agreement, including, but not limited to, the applicable statute of limitations, and nothing herein shall waive any claims or defenses any party hereto may have as of the execution of this Agreement.

8. This Agreement is not, and shall not be construed to be, an admission or indication that (i) any Party hereto bears or does not bear any actual or potential liability to any other person (whether or not a party to this Agreement) on any claim, action or complaint whatsoever; or (ii) that there is any wrongdoing of any nature by either party or any element or basis for any claim against any Party. This Agreement may not be used or admissible for any purpose other than the tolling of any time period.

9. This Agreement is an integrated agreement containing all the terms agreed upon by the parties with respect to this Agreement. Except as may be expressly provided herein, this Agreement supersedes all prior and contemporaneous oral or written statements, representations and agreements concerning the subject matter of this Agreement, and it may not be amended except by a writing executed by all the Parties hereto.

10. The undersigned individuals represent that they are authorized to execute this Agreement on behalf of the Parties.

11. This Agreement shall become effective upon execution by all Parties and shall be binding upon and inure to the benefit of each Party and its respective successors and assigns.

12. For the convenience of the Parties, this Agreement may be executed in any number of counterparts, each such counterpart being deemed an original instrument, and all such counterparts shall together constitute the same agreement. A facsimile or pdf signature shall be deemed an original signature.

13. Any modifications of this Agreement and/or the Tolling Period must be in writing and signed by all Parties.

14. The Parties agree that this Agreement was negotiated at arms-length, that no Party shall be deemed to have drafted this Agreement, and that the rule of construction pursuant to which contracts are construed against the drafter is inapplicable.

15. This Agreement shall be governed by and construed under the substantive laws of the State of Illinois without regard to principles of conflicts of law.

**IN WITNESS WHEREOF**, the undersigned have caused this Agreement to be executed as of the Effective Date.

**IMERYS TALC AMERICA, INC.**          **JOHNSON & JOHNSON**

By: _____          By: _____

Its: _____          Its: _____

**RIO TINTO AMERICA, INC.**

By: _____

Its: _____

4