**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>IMERYS TALC AMERICA, INC., *et al.*,[1]<br><br>       Debtors | Chapter 11<br><br>Case No. 19-10289 (LSS)<br><br>(Jointly Administered) |
| IMERYS TALC AMERICA, INC. and IMERYS TALC VERMONT, INC.,<br><br>       Plaintiffs,<br><br>    v.<br><br>JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC.,<br><br>       Defendants. | Adv. Pro. No. 21-51006 |

**MOTION OF THE OFFICIAL COMMITTEE OF TORT CLAIMANTS**
**TO INTERVENE IN AN ADVERSARY PROCEEDING**

The Official Committee of Tort Claimants (the "Committee" or "TCC") appointed in the jointly administered bankruptcy cases of Imerys Talc America, Inc. ("ITA"), Imerys Talc Vermont, Inc. ("ITV") and Imerys Talc Canada Inc. ("ITC", and with ITA and ITV, the "Debtors"), submits this Motion (the "Motion") to intervene in this adversary proceeding (the "Adversary Proceeding") as a Plaintiff pursuant to Section 1109(b) of the Bankruptcy Code, Rules 24(a) and 24(b) of the Federal Rules of Civil Procedure and Rule 7024 of the Federal Rules of Bankruptcy Procedure.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, GA 30076.

The Debtors who commenced the Adversary Proceeding have consented to the Committee's intervention.  Given: (i) the Debtors' consent; (ii) the Committee's unconditional right as well as its permissive right to intervene as discussed *infra*; and (iii) the actions that Johnson & Johnson ("JNJ") and Johnson & Johnson Consumer Inc. ("JJCI," and with JNJ, "J&J" or the "Defendants") have taken throughout these cases to delay and to otherwise adversely affect the rights of the constituency represented by the Committee, the Committee did not request J&J's consent to intervene as such request would be fruitless and/or result in additional needless delay.  In support of its Motion, the Committee represents as follows:

## PRELIMINARY STATEMENT

From the outset of these bankruptcy cases, the Debtors have made clear that their "primary goal is to confirm a consensual plan of reorganization pursuant to Sections 105(a), 524(g), and 1129 of the Bankruptcy Code that channels all of the present and future Talc Claims to a trust."  *See* Declaration of Alexandra Picard, Chief Financial Officer of the Debtors in Support of Chapter 11 Petitions and First Day Pleadings [Dkt. No. 10 at ¶¶ 11 and 56] (the "Picard Dec.").  Following extensive arms-length negotiations and a significant contested disclosure statement hearing, the Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and Its Debtors Affiliates Under Chapter 11 of the Bankruptcy Code (the "Plan") was sent out for solicitation and received the requisite overwhelming vote required by Section 524(g) to move forward to confirmation with hearings currently set to begin in November, 2021.

As set forth in the Picard Dec., it is the Debtors' view that the Talc Personal Injury Claims[2] are subject to uncapped indemnity rights against J&J under various stock purchase and supply agreements.  Picard Dec. at para. 38.  J&J has itself acknowledged to this Court that its indemnification obligations amount to "billions of dollars in potential liability."  (Sept. 22, 2020 Hr'g Tr. at 10:22, Dkt. No. 2252).

The Plan is intended to vest all of the rights of the Debtors to the benefits of these indemnities in the trust (the "Talc Personal Injury Trust") to be established pursuant to the Plan. The Complaint seeks declaratory relief regarding the nature and extent of each of ITA's, ITV's, JNJ's, and JJCI's obligations pursuant to these agreements.

The Committee was appointed by the Office of the United States Trustee on March 5, 2019. *See* Dkt. No. 131.  The notice of appointment explicitly states that the appointment was pursuant to Section 1102(a)(1) of title 11 of the United States Code (as applicable to these cases, the "Bankruptcy Code").  The Committee is made up of individuals (or their estates) who are suffering from injuries caused by the Debtors' talc and serves as a fiduciary for all similarly situated individuals.   As an official committee appointed pursuant to Section 1102 of the Bankruptcy Code, the Committee is a party-in-interest pursuant to Section 1109 of the Bankruptcy Code.  The relief sought in the Complaint, and the related litigation will have a direct measurable effect on the Committee's constituency.

The Committee submits this Motion on four alternative grounds so it may fully protect the interests of its constituency in this Adversary Proceeding on four alternative grounds. First, the Committee seeks to intervene in the Adversary Proceeding pursuant to the Third Circuit's

---

[2] Capitalized Terms used herein and not otherwise defined shall have the meanings ascribed to them in the Complaint commencing this Adversary Proceeding.

decision in *Matter of Marin Motor Oil, Inc.*, 682 F.2d 445 (3rd Cir. 1982), which specifically granted creditor committees an absolute right to appear and be heard in adversary proceedings pursuant to Section 1109(b) of the Bankruptcy Code.   Second, the Committee requests permission to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(1) because a federal statute - the Bankruptcy Code - affords such unconditional right as detailed in *Marin Motor Oil*.   Third, the Committee should be authorized to intervene pursuant to Fed. R. Civ. P. 24(a)(2) because the Committee has interests relating to J&J's obligations under its uncapped indemnities which are the subject of this Adversary Proceeding.   Fourth, the Committee should be granted permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B) because the Adversary Proceeding presents questions of law and fact which the Committee seeks to address on behalf of its constituency in this Adversary Proceeding and for which it has an interest independent of the Debtors/Plaintiffs.

The Committee has a unique and important perspective to provide in this Adversary Proceeding as it directly impacts the rights and interests of holders of Talc Claims, the intended beneficiaries of the Talc Personal Injury Trust to be established pursuant to the Plan that will be assigned the Debtors' rights to J&J's indemnity obligations.

The Committee's intervention will not prejudice the existing parties in this adversary proceeding that commenced only today.   No answer to the Complaint has been filed.   The Committee seeks to intervene in order to participate in all aspects of this adversary proceeding to ensure the rights of its constituency are protected.

Given the importance of the issues raised in the Complaint, and the harm that could be caused to its constituency if J&J pursues a strategy that seeks to cabin its legacy talc liabilities away from its immensely profitable enterprise, concurrent with the filing of the instant Motion, the Committee in its capacity as proposed intervenor will also be filing a motion for temporary

restraining order to ensure J&J does not conduct a divisive merger or undertake any other corporate manipulations which may affect the value of the uncapped indemnities that it owes to the Debtors.

## **STATUS OF THE DEBTORS' CHAPTER 11 CASES.**

1.    The Debtors commenced their bankruptcy cases (the "Chapter 11 Cases") on February 13, 2019 (the "Petition Date").  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Federal Rule of Bankruptcy Procedure 1015 and Del. Bankr. L.R. 1015-1.  *See* Dkt. No. 52.

2.    The Debtors have continued in the possession of their property and have continued to operate and manage their businesses as debtors in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner with enhanced powers has been appointed in the Chapter 11 Cases.

3.    On March 5, 2019, the United States Trustee (the "UST") noticed the appointment of the Committee in the Debtors' cases pursuant to Section 1102(a)(1) of the Bankruptcy Code [Dkt. No. 132].

4.    The Committee is composed of: (i) Robin Alander, represented by W. Mark Lanier and Maura Kolb of the Lanier Law Firm; (ii) Nolan Zimmerman, as representative of the estate of Donna M. Arvelo,[3] represented by Audrey Raphael of the law firm Levy Konigsberg LLP; (iii) Christine Birch represented by Wendy D. Julian of the law firm Gori Julian & Assoc, P.C.; (iv) Bessie Dorsey-Davis, represented by Amanda Klevorn of the law firm Burns Charest LLP; (v) Lloyd Fadem, as representative of the estate of Margaret Ferrell, represented by Steve Baron

---

[3]    Ms. Arvelo was originally appointed to the Committee but passed in May, 2019.  On June 11, 2019, the UST filed the Amended Notice of Appointment of Official Committee of Tort Claimants [D.I. 683] (the "Amended Notice").  Pursuant to the Amended Notice, Mr. Zimmerman, as estate representative for Ms. Arvelo, replaced Ms. Arvelo.  *See* Amended Notice at n.1.

of the law firm Baron & Budd, P.C.; (vi) Timothy R. Faltus, as representative of the estate of Shari C. Faltus, represented by James G. Onder of the law firm OnderLaw, LLC; (vii) Deborah Giannecchini, represented by Ted G. Meadows of the law firm Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.; (viii) Kayla Martinez, represented by Leah Kagan of the law firm Simon Greenstone Panatier, P.C.; (ix) David A. Martz, as estate representative for Lynne Martz[4], represented by the law firm of Ashcraft & Gerel, LLP; (x) Gregory W. Vella, as estate representative for Nicole Matteo[5], represented by Christopher Placitella; and (xi) Charvette Monroe, as representative of the estate of Margie Evans, represented by John R. Bevis.

5.    On January 27, 2021, this Court entered its Order (I) Approving Disclosure Statement and Form and Manner of Notice of Hearing Thereon, (II) Establishing Solicitation Procedures, (III) Approving Forma and Manner of Notice to Attorneys and Certified Plan Solicitation Directive, (IV) Approving Form of Ballots, (V) Approving Form, Manner, and Scope of Confirmation Notices, (VI) Establishing Certain Deadlines in Connection with Approval of Disclosure Statement and Confirmation of Plan, and (VII) Granting Related Relief (the "Solicitation Procedures Order").

6.    Following entry of the Solicitation Procedures Order, the Plan was solicited and received the requisite vote under Section 524(g) of the Bankruptcy Code to proceed to confirmation.  Extensive discovery related to the Plan is underway and a confirmation hearing is currently scheduled to begin in November, 2021.

---

[4]    Lynne Martz was originally appointed to the Committee but passed.  On January 22, 2021, the UST filed the Second Amended Notice of Appointment of Official Committee of Tort Claimants [Dkt. No. 2818] (the "Second Amended Notice").  Pursuant to the Second Amended Notice, David A. Martz, as estate representative for Ms. Martz, replaced Ms. Martz.  *See* Second Amended Notice at n.1.

[5]    Nicole Matteo was originally appointed to the Committee but passed.  Pursuant to the Second Amended Notice, Gregory W. Vella, as estate representative for Ms. Matteo, replaced Ms. Matteo.  See Second Amended Notice at n.2.

7.    The Plan includes, among other things, the formation of a Talc Personal Injury Trust to which holders of all Talc Personal Injury Claims will have their claims channeled.  The Plan also includes Trust Distribution Procedures which set forth the mechanism by which holders of Talc Personal Injury Claims may seek to have their claims resolved by the Talc Personal Injury Trust.

## NATURE AND STAGE OF THE ADVERSARY PROCEEDING

8.    ITA and ITV commenced the Adversary Proceeding on July 27, 2021 by filing a complaint [Adv. Dkt. No. 1] (the "Complaint") against the Defendants.   No answer or any other filing has occurred in the Adversary Proceeding to date.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b)(2) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper in this District pursuant to  28 U.S.C. §§ 1408 and 1409.  The predicates for the relief sought herein are Section 1109(b) of the Bankruptcy Code and Fed. R. Civ. P. 24, made applicable by Rule 7024 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules").  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

10.    Pursuant to Del. Bankr. L.R. 9013-1(f), the Committee confirms that it consents to entry of a final order by this Court in connection with this Motion if it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

### STATEMENT OF FACTS[6]

**A.     Debtors and their Relationship with J&J.**

11.   The Debtors were "in the business of mining, processing, selling, and/or distributing talc.  Talc is a hydrated magnesium silicate that is used in the manufacturing of dozens of products in a variety of sectors, including coatings, rubber, paper, polymers, cosmetics, food, and pharmaceuticals."  *See* Picard Dec. at ¶ 15.

12.   The Complaint sets forth in detail the corporate history by which certain mines that were owned and operated by a wholly owned subsidiary of J&J became property of the Debtors including but not limited the 1989 SPA and the 1992 ATA.  *See* Complaint at ¶¶ 20-23.  The talc was incorporated into such ubiquitous products as Johnson's Baby Powder and Shower to Shower.  Since 1989, the Debtors supplied talc to J&J through four supply agreements:  the "1989 Supply Agreement," the "2001 Supply Agreement," the "2010 Supply Agreement," and the "2011 Supply Agreement."  Historically, the Debtors have "been the sole supplier of cosmetic talc" to J&J, a large medical device, pharmaceutical, and consumer goods manufacturing company.  *See* Picard Dec. at ¶ 18.

**B.     J&J's Indemnification Obligations Were Not Honored Prior to the Petition Date and Were a Reported Catalyst to the Commencement of the Chapter 11 Cases.**

13.   The Complaint details J&J's uncapped indemnification obligations pursuant to the various Supply Agreements and the 1989 SPA; J&J's agreement to honor its indemnity agreement a single time in 1993, and the lawsuits that began in earnest in 2009 based on evidence that talc causes ovarian cancer and mesothelioma with J&J being sued by over 30,000

---

[6]  Rather than repeat verbatim the factual allegations contained in the Complaint, the Committee summarizes the facts here and incorporates the details of the Complaint by reference.

individual holders of Talc Personal Injury Claims before publicly announcing that it will stop selling talc-based products in the United States.  *See* Complaint at ¶¶ 25-43.

14.   Prior to the Petition Date, J&J was repeatedly asked by the Debtors to acknowledge and act on its bargain and indemnify the Debtors as J&J previously agreed.  Because of J&J's refusal, the Debtors filed for bankruptcy relief on the Petition Date. *See* Complaint at ¶¶ 44-56.

15.  Since the Petition Date, J&J has: (i) argued that it is the Debtors who owe obligations to J&J resulting in J&J filing proofs of claims in these cases; and (ii) attempted to transfer thousands of cases from their individual state and federal courts around the country to the District of Delaware (a campaign that ultimately was denied but affected trial schedules and denied justice for the victims caught up in J&J's procedural machinations).  *See* Complaint at ¶¶ 57-65.

16.   Since its failed attempt to move thousands of cases to Delaware, J&J has made some proposals to modify its indemnification obligations which efforts were detailed to this Court in the J&J Lift Stay Motion.  Those private negotiations as well as J&J's Lift Stay Motion each failed.  *See* Complaint at ¶¶ 66-77.

17.   Through the Complaint, the Debtors are seeking a number of declarations from this Court to resolve the various disputes between the Debtors and J&J regarding the obligations owed by one to the other under the J&J Indemnities.  This action is important for these estates and for the sole group of impaired claimants under the Plan – the constituency represented by the Committee.

## RELIEF REQUESTED

18.  The Committee seeks an order of this Court authorizing it to intervene in this Adversary Proceeding pursuant to Bankruptcy Rule 7024 and Fed. R. Civ. P. 24.  The Debtors consent to the Committee intervening as plaintiffs.

## ARGUMENT

**I.    THE COMMITTEE HAS AN ABSOLUTE RIGHT TO INTERVENE IN THE ADVERSARY PROCEEDING PURSUANT SECTION 1109(b) OF THE BANKRUPTCY CODE**

19.  Section 1109(b) of the Bankruptcy Code provides in full:

> (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b).

20.  In *Marin Motor Oil*, a case decided in the early years of the Bankruptcy Code, the Third Circuit determined that the language of Section 1109(b) should be read broadly to allow creditors' committees to intervene in adversary proceedings as well as cases.  There, the appellants argued that the term "case" referred "to the general administration of a Chapter 11 proceeding leading up to the confirmation of a plan of reorganization by the Bankruptcy Court." However, the Third Circuit said that it found "no reason to adopt this crabbed definition" of the word "case".  689 F.2d at 450-51.  Moreover, the Court called attention to the exact language of Section 1109(b), which grants a right to appear and be heard not in "a case" but "on any issue in a case."  Accordingly, the Third Circuit concluded that it is unlikely that Congress would have used such sweeping language if it had not meant "case" to be a broadly inclusive term.  Further, the Court noted that the failure of Congress to mention adversary proceedings in Section 1109(b) was "hardly surprising, given that Congress did not specifically mention adversary proceedings anywhere in the Bankruptcy Code."  *Id.*

21.  In the *Marin Motor Oil* bankruptcy, the Court-appointed trustee filed two adversary proceedings.  One adversary proceeding was to impose a constructive trust on a home bought with money borrowed from the debtor corporation by its owner, and the second adversary

proceeding was to pierce the debtor corporation's veil so as to extend the pending Chapter 11 cases to include the Marins' other businesses and the Marins personally and to bring the non-debtors' assets into the debtors' estate. 689 F.2d at 446-447. The creditors' committee was not satisfied with the trustee's performance in prosecuting the adversaries and sought to intervene in the proceedings.   The trustee opposed such motion, arguing that Section 1109(b) was limited to "cases" and that because the trustee was involved in "adversary proceedings," Section 1109(b) did not apply. *Id*. at 450.   Though the bankruptcy court in *Marin* refused to grant intervention, the district court reversed that decision and the Third Circuit affirmed the district court.

22.   The continuing vitality of *Marin Motor Oil* was reaffirmed by the Third Circuit in *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1233 (3rd Cir. 1994).   Both the plaintiff and defendant in the *Phar-Mor* case sought to limit the substantive right to intervene in adversary proceedings to adversary proceedings brought "under Chapter 11," and not to common law malpractice claims "related to" a case under Chapter 11.   However, the Third Circuit held in *Phar-Mor* that Section 1109(b) as interpreted by *Marin* allows creditors' committees to intervene in non-court "related to" proceedings pending in a federal district court. *Phar-Mor, Inc., 32 F.3d at 1240.   Further, the *Phar-Mor* Court noted that this conclusion is consistent with other courts' interpretations of the reach of *Marin*, citing among other cases *In re Allegheny International, Inc.*, 107 B.R. 518, 523 (W.D. Pa. 1989).   In *Allegheny International*, the district court stated that "the *Marin* Court construed the term "case" in Section 1109(b) as encompassing not only the general administrative proceeding in a Chapter 11 case but also adversary proceedings associated with a Chapter 11 case." *Phar-Mor*, 32 F.3d at 1241.

23.  In short, the Committee has a right to intervene in the Adversary Proceeding under the plain language of 11 U.S.C. § 1109 as interpreted by the Third Circuit.

## II.    THE COMMITTEE ALSO SATISFIES THE REQUIREMENT FOR UNCONDITIONAL INTERVENTION PURSUANT TO F.R.C.P. 24(a)(1)

24.  The Bankruptcy Rules incorporate, without change, the provisions of F.R.C.P. 24. *See* Bankruptcy Rule 7024 ("Rule 24 F.R.Civ. P. applies in adversary proceedings.").  Pursuant to Fed. R. Civ. P. 24(a)(1), the Court must permit intervention where the proposed intervenor "is given an unconditional right to intervene by a federal statute."  As discussed in Section I above, the Third Circuit has held in *Marin Motor Oil* and its progeny that a creditors' committee has the unconditional right to intervene in an adversary proceeding under Section 1109(b) of the Bankruptcy Code.  Accordingly, F.R.C.P. 24(a)(1) is satisfied and constitutes an independent ground for the Committee's intervention in this Adversary Proceeding.

## III.   THE COMMITTEE SATISFIES ALL REQUIREMENTS FOR UNCONDITIONAL INTERVENTION PURSUANT TO FED. R. CIV. P. 24(a)(2)

25.  Federal Rule of Civil Procedure 24(a)(2) entitles the Committee to intervene as of right in the Adversary Proceeding and provides, in relevant part:

> On timely motion, the court must permit anyone to intervene who: … (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

26.  Federal Rule 24 should be interpreted liberally in favor of intervention.  7C Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE § 1904 (3d ed.) ("It frequently has been said of Rule 24, as it is of the Civil Rules generally, that it is to be given a liberal construction."). The Committee readily satisfies the requirements of either standard.

27. The Third Circuit has held that an applicant is entitled to intervene under Fed. R. Civ. P. 24(a)(2) when: (1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation. *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987), *cert. denied*, 484 U.S. 947, 108 S.Ct. 336, 98 L.Ed.2 363 (1987) (citation omitted). *See also In re Schubh Hotels Pittsburgh, LLC*, 495 B.R. 274, 284-285 (Bankr. W.D. Pa. 2013). Although these requirements are intertwined, each must be met to intervene as of right. *Id.* The applicant bears the burden of demonstrating that it has met all four prongs. *Development Finance Corp. v. Alpha Housing & Health*, 54. F.3d 156, 162 (3d Cir. 1995), *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 n. 9 (3d Cir. 1994).

28. The timeliness factor is easily established. The Third Circuit has found that the timeliness inquiry centers around "what proceedings of substance on the merits have occurred," considering three factors: the stage of the proceeding, the prejudice that delay may cause the parties, and the reason for the delay. *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369–70 (3d Cir. 1995); *see Consol. SWINC Estate v. ACE USA, Inc.* (*In re Stone & Webster, Inc.*), 380 B.R. 366, 370 (Bankr. D. Del. 2008) (PJW) (holding the first factor was met by intervenors where no substantive proceedings had occurred). The timeliness of a motion to intervene is "determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion." *Mountain Top*, 72 F.3d at 369 (internal citations omitted). The first two factors are generally evaluated together "because the stage of the proceeding is inherently tied to the question of the prejudice the delay in intervention may

cause to the parties already involved." *Id*. at 370.  Importantly, "[t]he mere passage of time . . . does not render an application untimely." *Id*.

29.  The Complaint and the Motion for TRO were each filed on July 27.  No answer or other responsive pleading has been filed to the Complaint.  This Motion is being filed before any deadlines have passed (or even been set).  There is no prejudice to any party in having the Committee intervene as a plaintiff.  The Committee's intervention will not require any stay of proceedings or any relief that would require a delay in proceedings.  As a result, there can be no prejudice to the parties.

30.  *Second*, the Committee has a sufficient interest in the Adversary Proceeding to establish its entitlement to intervene. The "sufficient interest" standard is a flexible one, and while the Third Circuit has used labels such as "legally cognizable" or "significantly protectable" to describe a "sufficient interest," *Mountain Top*, 72 F.3d at 366, "the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote," *Kleissler*, 157 F.3d at 972.  If the Debtors are successful in their Complaint, there will be substantially greater assets available for the trust beneficiaries.  A determination of the nature and extent of the J&J's obligation to indemnify the Debtors has a direct effect on the corpus of the Talc Personal Injury Trust.  Barring the Committee from participating in these proceedings, in the interests of holders of all Talc Personal Injury Claims, will impair the Committee and by extension its entire constituency who will have their Talc Personal Injury Claims channeled to the Talc Personal Injury Trust pursuant to the Plan.

31.  Furthermore, the Committee has an interest in ensuring that J&J does not attempt a corporate shell game to cabin its legacy talc liabilities (along with a potential host of other legacy problems it has, such as opiates and benzene in sunscreen) into a newly formed shell and then

14

rush that shell off to seek bankruptcy protection in another jurisdiction.   The Committee therefore has a direct interest in the outcome of the Adversary Proceeding.

32.   Third, allowing the existing parties to the Adversary Proceeding to proceed without the Committee *will* impair the Committee's ability to protect the interests of its constituency.   In *Mountain Top Condominium*, the Third Circuit held that a proposed intervenor need only show that its interest "*might* become affected or impaired, as a practical matter, by this disposition of the action in their absence."   *Mountain Top*, 72 F.3d at 368 (emphasis in original).   Both the Debtors and J&J are adverse to the Committee's constituents in tens of thousands of personal injury cases caused by their respective products.   Resolution of this proceeding could therefore compromise the interests of the Committee against the Debtors and the Defendants and thereby impair or affect the rights of the tort claimants represented by the Committee.

33.   In determining whether an interest may be affected or impaired within the meaning of Fed. R. Civ. P. 24(a)(2), the court must assess "the practical consequences of the litigation," and "may consider any significant legal effect on the applicant's interest."   *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992).   As demonstrated above, the impact on the Debtors and in turn the Talc Personal Injury Trust constitutes a significant practical and legal effect on the interest of holders of Talc Personal Injury Claims in the trust *res*.

34.   Fourth, the existing parties cannot adequately protect the Committee's interests.   The burden to establish this part of the analysis is "treated as minimal," and requires that the proposed intervenor show only that representation "may be" inadequate.   *Mountain Top,* 72 F.3d at 369 (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).   As the Third Circuit held in *Mountain Top*, "[i]f the interest of the absentee is not represented at all, or if all existing parties are adverse to him, then he is not adequately represented."   *Id.* (internal

quotations omitted).  Although this Adversary Proceedings was filed by the Debtors and the Debtors and the Committee are likely aligned in their views on the indemnities, the interests of the Committee and the Debtors can never be identical.  The Debtors sold substantially all of their business assets in February, 2021.  The Debtors' sole goal at this point is to confirm a plan containing an injunction and channeling all of their talc liabilities to the Talc Personal Injury Trust.

35.  The Committee has a simple mandate that is not shared by any other party in this litigation or indeed the Chapter 11 Cases.  That mandate is to ensure that the interests of holders of Talc Personal Injury Claims are fully represented and that the value of the Talc Personal Injury Trust is maximized for the benefit of those the Committee represents.

36.  The Committee satisfies all four elements necessary to establish its entitlement to intervene as of right.  Accordingly, its motion to intervene should be granted.

## IV.    THE COMMITTEE SEPARATELY SATISFIES ALL OF THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER F.R.B.P. 24(b)(1)(B).

37.  While the Committee is entitled to intervene in the Adversary Proceeding as of right for the reasons set forth above, in the alternative, the Committee may be granted leave to intervene permissively under Fed. R. Civ. P. 24(b)(1)(B) made applicable to this Adversary Proceeding and incorporated without modification into Fed. R. Bankr. P. 7024.  That rule provides that, "[o]n timely motion, the court may permit anyone to intervene who:  (B) has a claim or defense that shares with the main action a common question of law or fact."

38.  Permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B) only requires that the proposed intervenor have "a claim or defense that shares with the main action a common question of law or fact."  *See, e.g.*, *Allentown Cement Co. v. Hong Sung Indus. Co.* (*In re United Minerals & Grains Corp.*), 76 B.R. 991, 1000 (Bankr. E.D. Pa. 1987) ("In order to satisfy the

requirements of this rule, the interest of the proposed intervenor need not be related to the property or transaction in issue, but merely 'have a question of law or fact in common with it.'") (citation omitted); *see also Consumer Fin. Prot. Bureau v. Nat'l Collegiate Master Student Tr.*, No. CV 17-1323 (MN), 2018 WL 5095666, at *6 (D. Del. Oct. 19, 2018) ("each of the Movants has issues that share a common question of law or fact with the underlying action").

39.  The positions of the Committee with respect to the relief requested in the Adversary Proceeding, including but not limited to the Complaint and the Motion for Temporary Restraining Order the Committee will be filing contemporaneously have a direct effect on the rights and interests of the Committee's constituency.  Accordingly, the Committee has a claim that shares with the main action a common question of law or fact.   As a matter of judicial economy as well as adequate representation, the Committee should be allowed to intervene on a permissive basis as well.

40. Fed. R. Civ. P. 24(b)(3) adds that "in exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).  As stated previously, there is no reason to believe that the Committee's intervention would delay the proceeding or prejudice the existing parties' rights.

<u>**CONCLUSION**</u>

The Committee should be allowed to intervene in this Adversary Proceeding pursuant to Section 1109(b) of the Bankruptcy Code.  Furthermore, due to the potential impact of this Adversary Proceeding on the *res* of the Talc Personal Injury Trust to be established in these cases and to which the Committee's constituency (involuntary creditors who are the sole impaired creditors in these cases) are channeled, the Committee may intervene as of right under each of Fed. R. Civ. P. 24(a)(1) and Fed. R. Civ. P. 24(a)(2).  Finally, this Court should exercise

its discretion to permit the Committee to intervene pursuant to Fed. R. Civ. P. 24(b)(1)(B).

WHEREFORE, the Committee respectfully requests that this Court: (a) enter an order, substantially in the form attached hereto, allowing the Committee to intervene in the Adversary Proceeding pursuant to 11 U.S.C. § 1109, Bankruptcy Rule 7024, and Fed. R. Civ. P. 24; and (b) grant such other and further relief as is just and proper.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**
**SIGNATURE PAGE FOLLOWS**

Dated:        July 27, 2021                                Respectfully submitted,
Wilmington, Delaware

**ROBINSON & COLE LLP**

*/s/ Natalie D. Ramsey*
Natalie D. Ramsey (No. 5378)
Mark A. Fink (No. 3946)
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Tel:   (302) 516-1700; Fax:   (302) 516-1699
nramsey@rc.com
mfink@rc.com

Michael R. Enright (admitted *pro hac vice*)
280 Trumbull Street
Hartford, CT 06103
Tel:  (860) 275-8290; Fax: (860) 275-8299
menright@rc.com

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Jeffrey B. Korn (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000; Fax: (212) 728-8111
rstrickland@willkie.com
jkorn@willkie.com
slombardi@willkie.com

**GILBERT LLP**
Kami E. Quinn (admitted *pro hac vice*)
Heather Frazier (admitted *pro hac vice*)
700 Pennsylvania Avenue, SE ; Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
quinnk@gilbertlegal.com
frazierh@gilbertlegal.com

*Counsel to the Official Committee of Tort Claimants*