# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>IMERYS TALC AMERICA, INC., *et al.*,[1]<br><br>Debtors | Chapter 11<br><br>Case No. 19-10289 (LSS)<br><br>(Jointly Administered) |
| IMERYS TALC AMERICA, INC. and IMERYS TALC VERMONT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC.,<br><br>Defendants. | Adv. Pro. No. 21-51006 |

## DECLARATION OF MARK A. FINK IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

I, Mark A. Fink, submit this declaration under penalty of perjury pursuant to 28 U.S.C. § 1746 and declare as follows:

1. I am a member of the law firm of Robinson & Cole LLP, counsel to the Official Committee of Tort Claimants. I am a member in good standing of the bar of the State of Delaware and have been admitted to this Court. I submit this declaration in support of the *Official Committee of Tort Claimants' and the Future Claimants' Representative's Motion for Temporary Restraining Order and Preliminary Injunction*, dated July 27, 2021.

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, GA 30076.

22635908

2. I am fully familiar with the matters set forth in this declaration, either from personal knowledge or review of files in possession of my firm.

3. No request for the relief sought herein has been made to this or any other court.

4. The Official Committee of Tort Claimants (the "Committee") and the Future Claimants' Representative (the "FCR," together with the Committee, the "Proposed Plaintiffs-Intervenors") seek (i) a temporary restraining order restraining and enjoining Defendants Johnson & Johnson ("JNJ") and Johnson & Johnson Consumer Inc. ("JJCI," and together with JNJ, "J&J"), pending a hearing on Plaintiffs-Intervenors' request for a preliminary injunction, from using a divisive merger or any other form of corporate transaction to separate themselves from the indemnification obligations they owe to Plaintiffs; and (ii) a preliminary injunction restraining and enjoining Defendants from using a divisive merger or any other form of corporate transaction to separate themselves from the indemnification obligations they owe to Plaintiffs pending the final adjudication of this adversary proceeding.

5. Plaintiffs face a likelihood of immediate and irreparable injury, loss, or other damage if a temporary restraining order and preliminary injunction are not granted.

6. In a series of contracts entered into between 1989 and 2011, J&J agreed to indemnify Imerys Talc America, Inc. ("ITA") and Imerys Talc Vermont, Inc. ("ITV"), and their affiliates and predecessors against all liabilities in connection with any product liability based claim arising out of J&J's talc-containing products, on and subject to the terms set forth in those agreements.

7. Attached hereto as Exhibit 1 is a true and correct copy the Talc Supply Agreement between Windsor Minerals Inc. and Johnson & Johnson Baby Products Company, a division of Johnson & Johnson Consumer Products, Inc., dated January 6, 1989.

8. Attached hereto as Exhibit 2 is a true and correct copy the Talc Supply Agreement between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated April 15, 2001.

9. Attached hereto as Exhibit 3 is a true and correct copy the Material Purchase Agreement between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated for term beginning January 1, 2010 and ending December 31, 2011.

10. Attached hereto as Exhibit 4 is a true and correct copy the Material Purchase Agreement between Johnson & Johnson Consumer Companies, Inc. and Luzenac America, Inc., dated for term beginning January 1, 2011 and ending December 31, 2011.

11. Attached hereto as Exhibit 5 is a true and correct copy of the Stock Purchase Agreement between Cyprus Mines Corporation and Johnson & Johnson, dated January 6, 1989.

12. Despite repeated demands by ITA and ITV, J&J has refused to honor its indemnification obligations.

13. Recently, the press has widely reported that J&J may undertake a "Texas two-step" bankruptcy filing and that it has engaged Jones Day, the law firm that pioneered that strategy. In a Texas two-step, a solvent non-debtor reincorporates in Texas and undergoes a divisive merger pursuant to Texas Business Organization Code § 1.002(55)(A), purporting to divide itself into two companies, one that takes significant liabilities and another that takes most of the assets, free of those same liabilities. Then the company that gets the liabilities files for

bankruptcy. If accurate, this could allow all of J&J's businesses to continue as usual outside of bankruptcy, protected from J&J's talc-related liability, while a shell company with no business to protect gains the benefit of the automatic stay without an incentive to quickly restructure and fully compensate the victims whose claims it was assigned through a corporate machination mere days or weeks earlier.

14. Attached hereto as Exhibit 6 is a true and correct copy of a news article by Andrew Scurria and Alexander Gladstone, titled *Johnson & Johnson Taps Jones Day to Explore Talc Bankruptcy*, published by The Wall Street Journal, and dated July 20, 2021.

15. Attached hereto as Exhibit 7 is a true and correct copy of a news article by Mike Spector, et al., titled *EXCLUSIVE: J&J Exploring Putting Talc Liabilities Into Bankruptcy*, published by Reuters, and dated July 19, 2021.

16. Attached hereto as Exhibit 8 is a true and correct copy of a news article by Catherine Corey, titled *Johnson & Johnson Looks to Two-Step Its Way From Asbestos Liability*, Debtwire, and dated July 21, 2021.

17. Without an injunction, J&J can use a Texas two-step or other corporate transaction to transfer property of the Debtors' estate and irreparably harm Plaintiffs. As J&J's counsel acknowledged before this Court, its indemnification obligations amount to "billions of dollars in potential liability." (Sept. 22, 2020 Hr'g Tr. at 10:22, Dkt. No. 2252.) If J&J is able to evade those obligations by dividing its assets and liabilities in a divisive merger and restructuring those liabilities in a subsequent bankruptcy proceeding, the Debtors and their estates will suffer substantial, permanent damage. Most critically, JNJ and JJCI—the defendants here and the parties to the Indemnification Agreements—would almost certainly argue that *they* no longer owe any

indemnification obligations to Plaintiffs (that would be the point of a divisive merger or transfer), and that no relief could be obtained against them through this action.

18. Nor is the fact that the remedies that Plaintiffs seek include money damages (in addition to declaratory relief) sufficient to mitigate this risk. Here, the purpose of a Texas two-step would be to transfer property of the Debtors' estate to a different entity to frustrate any judgment or remedy against *these defendants*. Among the benefits to J&J of such a bankruptcy would be delay and the ability to attempt to deny recovery to creditors such as the Debtors. That is sufficient to justify injunctive relief.

19. For these reasons and those argued more fully in the accompanying motion, in the absence of an *ex parte* temporary restraining order, immediate and irreparable injury, loss, or damage will result if immediate relief is not granted.

20. Movants did not provide notice to J&J prior to filing this motion and submit that such notice should not be required. A divisive merger can be completed in a matter of hours. If movants had provided advance notice to J&J, J&J may have completed a divisive merger or other corporate transaction purporting to transfer its indemnity obligations before the motion was filed.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 27, 2021

      /s/Mark A. Fink
      Mark A. Fink