# Exhibit 8


Debtwire
An Acuris company

# Johnson & Johnson looks to two-step its way from asbestos liability

21 July 2021 | 14:06 EDT

Reports have recently circulated that Johnson & Johnson (J&J) is considering a restructuring plan that would place its liabilities from widespread baby powder litigation[1] into a newly created business that would then seek bankruptcy protection, a process also known as a "Texas two-step" bankruptcy. Although not a widely used tactic, J&J would not be the first company to use this approach to isolate personal injury/tort claims. In this article, the *Debtwire* legal analyst team reviews the Texas divisive merger doctrine, and its use in two recent Chapter 11 restructuring cases.

*Everything's better in Texas*

How would the "Texas two-step" process help J&J address potential liability in these lawsuits, and what is a "Texas two-step" bankruptcy anyway? Under its divisive merger statute, Texas law allows any domestic Texas entity, including a corporation, partnership, LLC or limited partnership to divide into multiple entities. Following the division, the assets, liabilities, and obligations of the dividing entity are allocated among the new entities formed, and the division is not deemed to be an assignment or transfer of the dividing entity's assets or liabilities. [2]. That is step 1. Step 2 involves a bankruptcy filing for the new entity, discussed below.

*Imitation is the sincerest form of flattery*

Two cases in the recent past, Bestwall and DBMP, utilized the Texas two-step just prior to commencing their Chapter 11 cases, both outside of the Lone Star State, in the Western District of North Carolina.

Bestwall

Bestwall is an entity in the Georgia-Pacific (GP) corporate family, which was created to hold Georgia Pacific's asbestos-related liabilities and the assets of PlasterCo, a gypsum plaster products manufacturer. Bestwall commenced its Chapter 11 case on 2 November 2017, just months after completing a corporate restructuring under the Texas two-step process that ultimately resulted in GP isolating its potential asbestos liabilities from its main operating companies.

The company, after changing from a Delaware corporation to a Texas corporation, undertook a divisive merger that resulted in two companies: (i) Bestwall, which received certain of GP's assets (approximately USD 175m worth) and, importantly, also became solely responsible for certain liabilities, including any asbestos related liabilities of the pre-division GP, and (ii) the New GP, which received all other assets and accepted responsibility for the remaining liabilities. The reported purpose of the merger and corporate restructuring was to separate the business saddled with the asbestos claims from the GP

**PROPRIETARY**

**North America**

Legal Analysis
USA

**Issuer**
Bestwall LLC

**Restructuring Advisor(S)**
Berkeley Research Group, LLC

**Restructuring Counsel(S)**
Jones Day

**Issuer**
BlueLinx Holdings Inc

**Restructuring Advisor(S)**
Berkeley Research Group, LLC

**Restructuring Counsel(S)**
Jones Day

**Issuer**
CertainTeed Corporation

**Restructuring Advisor(S)**
Berkeley Research Group, LLC

**Restructuring Counsel(S)**
Jones Day

**Issuer**
Johnson & Johnson

**Restructuring Counsel(S)**
Jones Day

enterprise as a whole and address those claims in the context of a Chapter 11.

At the time of its filing, Bestwall had no funded debt and its only purpose was to manage and defend thousands of asbestos-related personal injury claims. In the restructuring, however, New GP committed to provide funding to Bestwall, both for the administration of the Chapter 11 case and a potential Bankruptcy Code Section 524(g) trust.[3]

Both an official committee of asbestos claimants (AAC) as well as a future claimants' representative were appointed in the case. These parties have been vocal opponents of Bestwall's bankruptcy strategy. Indeed, the AAC filed two motions to dismiss the bankruptcy, one alleging a bad faith bankruptcy filing and another claiming that the case has been languishing in bankruptcy with no progress towards an exit. Both motions were denied by the bankruptcy court. However, the exclusivity period for Bestwall to file a plan and disclosure statement has expired, and both the debtor and the AAC have filed competing plans. The debtor's plan proposes to establish a USD 1bn statutory trust to resolve any potential asbestos liability.

The parties engaged in an almost six-month long mediation process, which was ultimately unsuccessful. Now, almost four years later, the case is still pending, and while there is a competing plan process, no disclosure statement hearing has been held.

DBMP

Nearly three years after Bestwall's bankruptcy, DBMP, which is the entity created to address CertainTeed LLC's asbestos liabilities, filed for bankruptcy in January 2020. The Chapter 11 filing came after an October 2019 corporate restructuring that was identical to the restructuring implemented in Bestwall.

While an AAC has been appointed in the Chapter 11 case, and the company has filed a motion requesting the authority to use personal injury questionnaires to investigate claims of alleged plaintiffs, the docket for the main case has been relatively slow, as no plan or motion to estimate DBMP's asbestos liabilities has been filed. All of the action thus far has been in a related adversary proceeding, commenced by the debtor, seeking a preliminary injunction prohibiting the continuation of any actions against DBMP's non-debtor affiliates. A multi-day trial on the preliminary injunction was held in March 2021, but no decision has yet been rendered by the bankruptcy court. Whether DBMP is headed down the same long and contentious road with the AAC appointed in its case remains to be seen.

Conclusion

Bestwall and DBMP, the two pending bankruptcy cases that have used the "Texas two-step" process to isolate their asbestos liabilities and then file for Chapter 11 in order to utilize Section 524(g) of the Bankruptcy Code to resolve those claims, demonstrate some of the pitfalls that a company like J&J might face with respect to this type of corporate restructuring.

As noted above specifically with respect to Bestwall, a "Texas two-step" bankruptcy can be time-consuming and expensive. Indeed, Bestwall has been lingering in bankruptcy for almost four years, while DBMP anticipates that its Chapter 11 case could double that, taking as much as eight years. Normally, the expense of such a long Chapter 11 case would deter a bankruptcy filing but given that the filing entity was specifically set up for this purpose, and that a Chapter 11 is likely less expensive than continuing to defend against tens of thousands of liability claims across the country, the benefits of such a long and expensive bankruptcy case may outweigh the alternative.

Although there are pitfalls, there are additional benefits if J&J were to pursue this type of restructuring. First, there is Section 524(g) of the Bankruptcy Code, which was codified following the Johns Manville Chapter 11 as a direct response to the difficulties in that restructuring in addressing the company's asbestos liabilities. Section 524(g) allows a company to channel its past and future asbestos-related liabilities to a trust that provides for the reconciliation and payment of asserted claims, as well as enjoins holders of past and future claims from pursuing the reorganized company for damages with respect to those claims. In other words, Section 524(g) allows a company to sweep its asbestos liabilities off its balance sheet and makes them the trust's responsibility.

Another benefit for J&J is that the company could choose a jurisdiction favorable to asbestos debtors, such as the Western District of North Carolina, to file for bankruptcy. It appears to have already chosen restructuring counsel familiar with such issues – Jones Day – which is representing both Bestwall and DBMP in their Chapter 11 cases.

Thus, the "Texas two-step" bankruptcy certainly does appear to have its appeal for J&J to resolve what is potentially billions of dollars of liability in one forum. However, like Bestwall, J&J may not have smooth sailing in Chapter 11. The company is likely to face opposition from an official or unofficial tort claimant's committee, among others, who may not be on board with the filing strategy. Stay tuned to *Debtwire* for further analysis as this situation continues to develop.

Relevant Links:
Bestwall Case Profile
Debtwire Dockets: Bestwall
Debtwire Restructuring Database: Bestwall (Access Required)
DBMP Case Profile
Debtwire Dockets: DBMP
Debtwire Restructuring Database: DBMP (Access Required)

by Catherine Corey

*Catherine is a former practicing restructuring attorney.  Prior to joining Debtwire as a legal analyst, Catherine practiced in the New York office of Kelley Drye & Warren LLP and the New Jersey office of Norris McLaughlin, P.A. in the area of business reorganizations and commercial litigation.  She has represented corporate debtors, creditors' committees, secured lenders and investment banks across a broad range of industries.  Catherine also obtained her LL.M in Bankruptcy from St. John's University School of Law.*

*Any opinion, analysis or information provided in this article is not intended, nor should be construed, as legal advice, including, but not limited to, investment advice as defined by the Investment Company Act of 1940. Debtwire does not provide any legal advice and subscribers should consult with their own legal counsel for matters requiring legal advice.*

Endnotes

[1] J&J is facing legal action from tens of thousands of plaintiffs that have alleged that its baby powder and other talc-based products contained asbestos and ultimately caused cancer, including ovarian cancer and mesothelioma. J&J has already received a ruling from a Missouri court that awarded USD 2bn in damages to women that alleged the talc powder caused their ovarian cancer.

[2] Texas Business Organizations Code Sections 1.002(25) and 10.008.

[3] Bankruptcy Code Section 524(g) was codified following the Johns Manville Chapter 11 bankruptcy specifically to permit companies faced with continuing liabilities because of their use or distribution of asbestos-containing products to resolve both their current and future asbestos-related liabilities. This section of the Bankruptcy Code allows a company to channel the potential liability claims into a trust that will provide for the payment of current and future claimants, as well as enjoin the holders of future claims from pursuing the reorganized company.

© MERGERMARKET GROUP. ALL RIGHTS RESERVED.
To be used for the internal business of the assigned users only. Sharing, distributing or forwarding the entirety or any part of this article in any form to anyone that does not have access under your agreement is strictly prohibited and doing so violates your contract and is considered a breach of copyright. Any unauthorised recipient or distributor of this article is liable to Debtwire for unauthorised use and copyright breach.