## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>IMERYS TALC AMERICA, INC., *et al.*,[1]<br><br>Debtors | Chapter 11<br><br>Case No. 19-10289 (LSS)<br><br>(Jointly Administered) |
| IMERYS TALC AMERICA, INC. and<br>IMERYS TALC VERMONT, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>JOHNSON & JOHNSON and JOHNSON &<br>JOHNSON CONSUMER INC.,<br><br>Defendants. | Adv. Pro. No. 21-51006 |

**MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY, AND FOR
DISCOVERY SCHEDULE ON MOTION FOR PRELIMINARY INJUNCTION**

The Official Committee of Tort Claimants (the "Committee") and the Future Claimants'

Representative (the "FCR" together with the Committee, "Plaintiffs-Intervenors") for their

Motion for Leave to Conduct Expedited Discovery, and for Discovery Schedule on Motion for

Preliminary Injunction ("Motion for Expedited Discovery"), state as follows:

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6358), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East, Suite 300, Roswell, GA 30076.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

1.      On July 27, 2021, Imerys Talc America, Inc. ("ITA") and Imerys Talc Vermont, Inc. ("ITV" and together with ITA, "Plaintiffs") filed their Complaint against defendants Johnson & Johnson ("JNJ") and Johnson & Johnson Consumer Inc. ("JJCI" and together with JNJ, "J&J" or "Defendants") seeking declaratory judgments regarding J&J's obligation to indemnify the Plaintiffs, and their affiliates and predecessors, for all losses, liabilities, damages, costs, and expenses in connection with product liability claims arising out of the sale of talc or talc-containing products by J&J or its affiliates, and damages for J&J's breach of those same contracts.

2.      On July 28, 2021, the Plaintiffs-Intervenors filed a Motion for Temporary Restraining Order and Preliminary Injunction (the "Motion for Preliminary Injunction") contemporaneous with Motions to Intervene in an Adversary Proceeding (the "Motions to Intervene") in this adversary proceeding (the "Adversary Proceeding") as Plaintiffs pursuant to Section 1109(b) of the Bankruptcy Code, Rules 24(a) and 24(b) of the Federal Rules of Civil Procedure and Rule 7024 of the Federal Rules of Bankruptcy Procedure.

3.      Also on July 28, 2021, the Congressional Subcommittee on Economic and Consumer Policy sent a letter to J&J (the "House Subcommittee Request") requesting "information about Johnson & Johnson's reported plans to seek bankruptcy protection for a dedicated subsidiary the company would create to assume liability for injuries allegedly caused by Johnson & Johnson talc baby powder."  A copy of the House Subcommittee Request is attached hereto as Exhibit A.

4.      On July 29, 2021, this Court established a schedule in connection with the Motion for Preliminary Injunction and the Motions to Intervene that calls for Defendants to file any

objections on or before August 12, 2021.  Plaintiffs-Intervenors would then file any replies on or before August 19 and the Court would conduct a hearing on both motions on August 24, 2021.

5.      Defendants have agreed to maintain the "status quo" pending the resolution of the Motion for Preliminary Injunction.  *In re Imerys Talc America, Inc.*, July 29, 2021 Hr'g Tr. at 13:13-15; *id.* at 14:14-25.

6.      In their Motion for Preliminary Injunction, the Plaintiffs-Intervenors seek injunctive relief against Defendants to prevent substantial and irreparable harm that would result if Defendants are able to use a divisive merger, or any other form of corporate transaction, to separate themselves from the indemnification obligations they owe to Plaintiffs.  Those obligations are potentially the largest asset of the Debtors' estate.

7.      If J&J is able to reallocate its indemnification obligations through a divisive merger or other transaction, Plaintiffs and their estates will suffer significant, permanent damage. Following such a transaction, the Defendants would undoubtedly maintain they no longer owe any indemnification obligations to Plaintiffs and that no relief could be granted against them in this action.  *See* Memorandum of Law in Support of the Official Committee of Tort Claimants' and the Future Claimants' Representative's Motion for Temporary Restraining Order and Preliminary Injunction ("Plaintiffs-Intervenors' Memo.") (Doc. 5) at 13–15.

8.      It is also unclear what, if anything, J&J already may have done to affect the value of the Debtors' indemnities, which J&J's own counsel acknowledges may be worth billions of dollars.  Plaintiffs-Intervenors' Memo. at 4–5.

9.      As the Plaintiff-Intervenors have argued in the Motion for Preliminary Injunction, a preliminary injunction is necessary to protect and maintain the Plaintiffs and their estates, which will suffer irreparable harm in the absence of injunctive relief.  In the alternative, if J&J has

already taken steps to affect these valuable estate assets, although such action in violation of the stay is void *ab initio*, J&J is liable for damages caused by its willful violation of the automatic stay. *See* 11 U.S.C. § 362(k).

10.     By this Motion for Expedited Discovery, Plaintiffs-Intervenors respectfully request the Court grant leave to conduct expedited discovery and enter a scheduling order requiring J&J to promptly produce documents and respond to limited interrogatories.

**RELIEF REQUESTED**

11.     Plaintiffs-Intervenors seek an order of this Court granting the parties leave to conduct expedited discovery and setting a schedule for that expedited discovery.

**ARGUMENT**

12.     This Court has the inherent authority to expedite discovery and issue scheduling orders on discovery, briefing, and hearings, when warranted by the circumstances. *See, e.g.*, *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983) (every court has inherent power to "schedule disposition of the cases on its docket so as to promote fair and efficient adjudication"); *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 176 (3d Cir. 1991) (district court has "substantial discretion in managing its own docket").

13.     The Court also has the authority under Section 105(a) of the Bankruptcy Code to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).  "Section 105 specifically codifies what are traditionally called 'inherent powers' to give the bankruptcy courts the necessary ability to manage the cases on their docket." *Copley Press, Inc. v. Peregrine Sys., Inc.* (*In re Peregrine Sys. Inc.*), 311 B.R. 679, 690 (D. Del. 2004) (footnote omitted).  Rule 9006-1(e) of the Local Rules for the United States Bankruptcy Court District of Delaware (the "Local Rules") also

4

permits the Court to expedite proceedings where appropriate, and Local Rule 1001-1(c) permits the Court to modify the default requirements of the Local Rules "in the interest of justice."

14.    With respect to the service of discovery, Rule 26 of the Federal Rules of Civil Procedure, made applicable to this Adversary Proceeding pursuant to Federal Rule of Bankruptcy Procedure 7026, provides that: "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure from Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." Fed. R. Civ. P. 26(d)(1). "[C]ourts have broad discretion to manage the discovery process, and can accelerate or otherwise alter the timing and sequence of discovery." *Kone Corp. v. Thyssenkrupp USA, Inc.*, Civ. Act. No. 11-465-LPS-CJB, 2011 WL 4478477, at *3 (D. Del. Sept. 26, 2011).

15.    Expedited discovery is generally appropriate in cases, such as this, where a party is attempting to prepare for a preliminary injunction hearing. *Id.* at *7 ("[C]ourts have regularly noted that expedited discovery is more likely to be an efficient use of the parties' resources when it relates to a pending preliminary injunction hearing, where it can help to ensure a clear and focused factual record.") (collecting cases). The District of Delaware applies a good cause or reasonableness standard when evaluating motions to expedite discovery, requiring the court to assess "the actual circumstances of [this] case, as well as [to consider] certain factors such as a pending preliminary injunction hearing, the need for discovery, and the breadth of the moving party's discovery requests." *Id.* at *6 (quoting *BAE Sys. Aircraft Controls Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587-88 (D. Del. 2004)). These factors unquestionably weigh in favor of permitting expedited discovery in the instant proceeding.

16.     First, the discovery sought will assist the Court in resolving the Motion for Preliminary Injunction.  While Plaintiffs-Intervenors have learned through reliable media reports of the Defendants' intention to undergo a divisive merger or other form of corporate transaction to reallocate their talc liabilities, these public reports may only scratch the surface of the Defendants' corporate maneuvering.  Additional discovery and investigation are necessary to ensure that the Motion for Preliminary Injunction is decided on a more complete record.

17.     Second, the discovery is necessary.  The Plaintiffs-Intervenors commenced this action in light of the various news reports.  Though those reports alone are sufficient to allow Plaintiffs-Intervenors to meet their burden, Defendants will undoubtedly maintain that they are not.  Since any additional non-privileged information relevant to the Motion for Preliminary Injunction is in Defendants' possession, discovery from Defendants is necessary.

18.     Third, the expedited discovery Plaintiffs-Intervenors seek here is not unduly burdensome and is of reasonable breadth, considering the importance of the matters at stake, the limited scope and duration of the requests, and the fact that Defendants are contemporaneously responding to substantially similar requests from Congress.  A copy of the discovery requests served by Plaintiffs-Intervenors is attached hereto as Exhibit B (the "Requests").

19.     The Requests are narrowly-tailored to support Plaintiffs-Intervenors' pending Motion for Preliminary Injunction.  The Requests are limited to:

(a) three narrowly-tailored interrogatories limited to specific issues presented by the Motion for Preliminary Injunction; and

(b) four similarly narrowly-tailored requests for production, including a request for a copy of any materials produced in response to the House Subcommittee Request.

20.    Pursuant to Local Rule 9006-1(e), the undersigned represents that Plaintiffs.  Given: (i) Plaintiffs' consent; and (ii) Plaintiffs-Intervenors' substantial need for expedited discovery to adequately present their preliminary injunction claims, Plaintiffs-Intervenors respectfully request the Court provide the relief sought herein.  This motion is necessary because J&J has stated that it will not agree to provide any discovery in connection with the Motion for Preliminary Injunction.

WHEREFORE, Plaintiffs-Intervenors respectfully request the Court enter an Order:

(1)    granting them leave to conduct expedited discovery;

(2)    requiring them to serve the Requests on J&J no later than 1 business day following entry of the Court's Order;

(3)    requiring Defendants to serve written responses (and any objections) to the written discovery requests within 3 days following service of the requests;

(4)    requiring Defendants to produce responsive documents and respond to interrogatories no later than August 12; and

(5)    granting all such other relief as the Court deems appropriate.

[Signature page follows]

Dated: August 4, 2021
Wilmington, Delaware

Respectfully submitted,

**ROBINSON & COLE LLP**

*/s/ Natalie D. Ramsey*
Natalie D. Ramsey (No. 5378)
Mark A. Fink (No. 3946)
1201 North Market Street, Suite 1406
Wilmington, Delaware 19801
Tel:  (302) 516-1700; Fax:  (302) 516-1699
nramsey@rc.com
mfink@rc.com

Michael R. Enright (admitted *pro hac vice*)
280 Trumbull Street
Hartford, CT 06103
Tel:  (860) 275-8290; Fax: (860) 275-8299
menright@rc.com

**WILLKIE FARR & GALLAGHER LLP**
Rachel C. Strickland (admitted *pro hac vice*)
Jeffrey B. Korn (admitted *pro hac vice*)
Stuart R. Lombardi (admitted *pro hac vice*)
787 Seventh Avenue
New York, New York 10019
Tel: (212) 728-8000; Fax: (212) 728-8111
rstrickland@willkie.com
jkorn@willkie.com
slombardi@willkie.com

**GILBERT LLP**
Kami E. Quinn (admitted *pro hac vice*)
Heather Frazier (admitted *pro hac vice*)
700 Pennsylvania Avenue, SE; Suite 400
Washington, DC 20003
Telephone:  (202) 772-2200
quinnk@gilbertlegal.com
frazierh@gilbertlegal.com

*Counsel to the Official Committee of Tort Claimants*

and

**YOUNG CONAWAY STARGATT &
TAYLOR, LLP**
Robert S. Brady (No. 2847)
Edwin J. Harron (No. 3396)
Sharon M. Zieg (No. 4196)
Jared W. Kochenash (No. 6557)
Rodney Square
1000 North King Street
Wilmington, DE 19801
Tel. (302) 571-6600; Fax:  (302) 571-1253
rbrady@ycst.com
eharron@ycst.com
szieg@ycst.com
jkochennash@ycst.com

*Counsel to the Future Claimants' Representative*