# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: <br><br> IMERYS TALC AMERICA, INC., *et al.*,[1] <br><br> Debtors | Chapter 11 <br><br> Case No. 19-10289 (LSS) <br><br> (Jointly Administered) |
| IMERYS TALC AMERICA, INC. and IMERYS TALC VERMONT, INC., <br><br> Plaintiffs, <br><br> v. <br><br> JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC., <br><br> Defendants. | Adv. Pro. No. 21-51006 |

**JOHNSON & JOHNSON'S AND JOHNSON & JOHNSON CONSUMER INC.'S OBJECTION TO THE PROPOSED INTERVENORS' MOTION TO SHORTEN MOTION FOR LEAVE TO CONDUCT EXPEDITED DISCOVERY AND FOR DISCOVERY SCHEDULE ON MOTION FOR PRELIMINARY INJUNCTION**

Johnson & Johnson and Johnson & Johnson Consumer Inc. (collectively, "**J&J**"), by and through its undersigned counsel, submit this objection (the "**Objection**") to the *Motion to Shorten Motion for Leave to Conduct Expedited Discovery and for Discovery Schedule on Motion for Preliminary Injunction* [D.I. 18] (the "**Motion to Shorten**"), filed by the Official Committee of Tort Claimants ("**TCC**") and the Future Claimants Representative ("**FCR**") (collectively, the "**Proposed Intervenors**").

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Imerys Talc America, Inc. (6348), Imerys Talc Vermont, Inc. (9050), and Imerys Talc Canada Inc. (6748). The Debtors' address is 100 Mansell Court East Suite 300, Roswell, Georgia 30076.

The Proposed Intervenors just ignore the agreement approved at last week's hearing, and try and seek a second bite of the apple. The Court should deny the Motion to Shorten because at the July 29, 2021 hearing the Proposed Intervenors specifically agreed to both forego discovery and to a briefing schedule approved by the Court—which does not include any discovery from J&J. Indeed, J&J conditioned its agreement to an expedited briefing schedule and preserving the *status quo* until the Injunction Motion (defined below) could be fully briefed and decided by this Court on the Proposed Intervenors' agreement to forego discovery. The agreement was appropriate because the Injunction Motion raises purely legal issues that do not require discovery to resolve and, moreover, the discovery requested seeks privileged information. The Court approved this agreement and ordered a briefing and hearing schedule for the Injunction Motion. In the week since the parties reached that agreement in open court and this Court approved that agreement, nothing has changed. The Proposed Intervenors did not, nor could they, cite any changed circumstance that would require the Court to order a schedule for discovery, particularly on an expedited basis. The Court should deny the Motion to Shorten as a violation of the parties' agreement and the Court's order, as well as for failure to demonstrate the requisite exigency for expedited consideration of their Discovery Motion.[2]

## BACKGROUND

1.    July 28, 2021 was a regularly scheduled omnibus hearing date before this Court in the above-captioned chapter 11 cases.

2.    The night before the hearing, at approximately 11:30 p.m., the Debtors filed an Adversary Complaint against J&J, claiming that J&J owed indemnity to the Debtors under certain

---

[2] *Motion for Leave to Conduct Expedited Discovery, and for Discovery Schedule on Motion for Preliminary Injunction* [D.I. 17] (the "**Discovery Motion**").

talc supply agreements between the Debtors and J&J and their respective predecessors and affiliates (the "**Indemnity Agreements**"). *See Complaint* [D.I. 1] (the "**Adversary Complaint**").[3] The Debtors seek declaratory judgment and damages arising out of J&J's alleged breach of the Indemnity Agreements.[4]  *See id.*

3. In the early hours of July 28th, the Proposed Intervenors filed Motions to Intervene in the Adversary Proceeding. *See Motion of the Official Committee of Tort Claimants to Intervene in an Adversary Proceeding* [D.I. 2] (the "**TCC Motion**"); *The Future Claimants' Representative's Motion to Intervene in an Adversary Proceeding and Joinder in the Official Committee of Tort Claimants to Intervene in an Adversary Proceeding* [D.I. 8] (the "**FCR Motion**") (collectively, the "**Motions to Intervene**").

4. Contemporaneously with their Motions to Intervene, the Proposed Intervenors jointly filed the Injunction Motion,[5] seeking a temporary restraining order ("**TRO**") and Preliminary Injunction ("**PI**") to enjoin J&J from engaging in a divisive merger (a legal corporate transaction), claiming J&J may attempt to transfer its contractual indemnity obligations into a new company that will file for bankruptcy. *See* Injunction Motion at 6.

5. The next day at the July 28 omnibus hearing, the Proposed Intervenors asked that

---

[3] Unless otherwise indicated all references to [D.I. ●] are to docket items in the above-captioned adversary proceeding (the "**Adversary Proceeding**"). Unless otherwise indicated, all emphasis is added and all internal quotation marks and citations have been omitted.

[4] J&J will respond to the issues raised in the Injunction Motion on the schedule agreed to by the parties and ordered by the Court, including all substantive and procedural arguments.

[5] *Motion of the Official Committee of Tort Claimants and the Future Claimants' Representative for Temporary Restraining Order and Preliminary Injunction* [D.I. 4] (the "**Injunction Motion**"); *see also Memorandum of Law in Support of the Official Committee of Tort Claimants' and the Future Claimants' Representative's Motion for Temporary Restraining Order and Preliminary Injunction* [D.I. 5].

the Court rule on the TRO—less than fifteen hours after it had been filed and without an opportunity for J&J to respond. *See* July 28 Hr'g Tr. at 77:14–17. Given the short time between the late-night filing and the July 28 hearing, the Court declined to enter the "somewhat extraordinary relief" sought by the Proposed Intervenors and set a hearing for the following afternoon. *See id.* at 79:22–25.

6. That evening, the parties met and conferred in an effort to reach an agreement on a proposed schedule and path forward. J&J offered to maintain the *status quo* until the hearing date on the Injunction Motion in return for setting a reasonable expedited schedule to litigate the Injunction Motion. The Proposed Intervenors said they would discuss J&J's proposal and get back to J&J before the July 29 hearing.

7. The next day, the Proposed Intervenors sent J&J counsel a counterproposal containing a similarly expedited briefing and hearing schedule but conditioned on J&J providing certain discovery in connection with the Injunction motion.[6] Specifically, the Proposed Intervenors demanded that (i) J&J produce documents responsive to a July 28 letter (the "**House Letter**")[7] from the House Subcommittee on Economic and Consumer Policies (the "**Subcommittee**"), (ii) make certain representations about its intentions, and (iii) provide "verified responses" to twelve questions relating to steps J&J may have taken or might take in relation to

---

[6] On July 29, 2021, at 10:58 a.m., J&J counsel received a document from TCC counsel with the Proposed Intervenors' proposed schedule and related terms. A true and correct copy of that proposal is attached hereto as Exhibit A.

[7] As the House Letter makes clear, a July 19 article published by Reuters prompted the Subcommittee's investigation. *See* House Letter n.1; *See J&J Exploring Putting Talc Liabilities into Bankruptcy*, Reuters (July 19, 2021) (available at https://www.reuters.com/business/healthcare-pharmaceuticals/exclusive-jj-exploring-putting-talc-liabilities-into-bankruptcy-sources-2021-07-18/) (the "**Reuters Article**"). A true and correct copy of the Reuters Article is attached hereto as Exhibit B. The Reuters Article, in turn, names "plaintiffs' lawyers" negotiating a settlement with J&J as its sources.

4

the parties' indemnification agreements.

8.     While J&J had been open to discussing an expedited briefing schedule, it was not open to considering any discovery in connection with the Injunction Motion because the Injunction Motion raised purely legal issues that did not require discovery to resolve. Moreover, the discovery requested sought the production of privileged information.

9.     At the July 29 hearing, the parties appeared before this Court to discuss the Proposed Intervenors' TRO and a schedule for the Injunction Motion. The Proposed Intervenors explained J&J's offer to maintain the *status quo*, claiming that they did not know what that meant and needed further explanation from J&J. *See* July 29 Hr'g Tr. at 13:22–14:16. They also told the Court that they wanted discovery, including documents responsive to the House Letter. *See* July 29 Hr'g Tr. at 11:1–5 (TCC Counsel: "We also asked J&J to agree to give us whatever documents it produces to Congress. Yesterday, the [Subcommittee] sent J&J a letter, asking J&J to produce documents relating to these very issues. And our request for production was very simple: Give us what you give Congress.").

10.    J&J responded that no discovery is warranted given that the issues were purely legal. *See* July 29 Hr'g Tr. at 12:7–14 ("There is no need for discovery. And he's right, that's a key issue. And I can't show it to you, but [the TCC's discovery request is] a page long, 12 items, you know, represent this, represent that, give us these documents, verify these responses. You don't need any of that. It's a legal issue…. It's a legal question, and we're going to put that to you in our papers. There's no need for discovery.").

11.    The Court then pressed the Proposed Intervenors on whether they wanted to accept J&J's offer of maintaining the *status quo* without discovery and its proposed schedule on the PI, or would prefer to have the Court rule on the TRO at the hearing. *See id.* 15:8–11 (The Court: "If

you don't have a deal and you're not prepared, then let's hear the TRO. I'll give you my ruling. But they've offered something, it's up to you.").

12. The Proposed Intervenors then clarified with the Court exactly what was being offered. *See id.* at 15:3–6 (TCC Counsel: "***So the question is: Whether we'd accept an agreement to preserve the status quo, whatever it is, go forward on an expedited hearing, and <u>not receive responses to the 12 questions that we posed</u>?***" The Court: "<u>***Well, I guess so, I guess that's the question***</u>."). The Proposed Intervenors elected to accept J&J's offer. *See id.* at 15:12–15 (TCC Counsel: "Understood, Your Honor. We are prepared to proceed, if the agreement is to preserve the status quo, on an expedited schedule, and agree to tee this up for a hearing at Your Honor's earliest availability.").

13. The Court then asked if the parties would like a break to discuss a proposed schedule, which the parties agreed to. During the short recess, the parties conferred and agreed to move forward on an expedited briefing schedule with a hearing scheduled for August 24, 2021. *See id.* at 16:26–17:23. That schedule, which the Court approved, did not contemplate discovery. Nor could it; J&J's forbearance was conditioned upon that very concession from the Proposed Intervenors. *See id.* at 12:7–14.

14. ***One week after the July 29 hearing at which the schedule for the Injunction Motion was ordered***, the Proposed Intervenors filed the Motion to Shorten and related Discovery Motion. Ignoring that this issue had already been addressed and resolved at the hearing, and pointing to nothing that has changed, the Proposed Intervenors press on as if the prior hearing never happened. But they cannot change reality. The discovery they previously sought but abandoned is the same discovery they seek again but they point to no new developments and offer no reason whatsoever for backing out of the Court-approved July 29 stipulation, relying only on

the repeated claim that they need discovery to bolster their arguments, even though they also claim that what they have in their Injunction Motion is enough. *See* Discovery Motion ¶ 17 ("The [Proposed]-Intervenors commenced this action in light of the various news reports. Though those reports alone are sufficient to allow Plaintiffs-Intervenors to meet their burden, Defendants will undoubtedly maintain that they are not."). If the Plan Intervenors truly believed that these discovery issues were not resolved at the July 29 hearing—which would be disingenuous to say the least—then they should not have agreed to the schedule, let the Court rule on their TRO at the July 29 hearing, and pressed for discovery. They certainly should not have waited a week to claim that this was somehow an emergency and still an open issue. The Proposed Intervenors' attempts to unilaterally renege on their open-court agreement is not conduct that should be rewarded, but rather given the short shrift it deserves.

15. Thus, it is not only appropriate for this Court to deny the Motion to Shorten, it should also summarily deny the Discovery Motion as well. If the Court is inclined to consider the Discovery Motion after denying the Motion to Shorten, however, J&J will submit a formal opposition next week on a schedule to be set by the Court.

## OBJECTION

16. As styled, and in light of the facts, the Proposed Intervenors' Motion to Shorten and Discovery Motion are more akin to a motion to reargue or motion for reconsideration in an effort to relitigate the discovery requests the Proposed Invenors abandoned at the July 29 hearing. Such motions require either "evidence of changed circumstances" or must seek to "correct manifest errors of law or fact or to present newly discovered evidence" to "discourage litigants from making repetitive arguments on the same issues that have been thoroughly considered by the court"—and they "should be granted sparingly." *Merrell-National Laboratories, Inc. v. Zenith*

7

*Laboratories, Inc.*, 579 F.2d 786, 791–92 (3d Cir. 1978) (acknowledging that a motion to reargue necessarily requires evidence of changed circumstances and that such a motion does not force the [] judge to permit relitigation of [her] original determination of the [matter]); *Range Road Music, Inc. v. Music Sales Corp.*, 90 F. Supp. 2d 390 (S.D. N.Y. 2000) ("Motions for reconsideration or reargument must be narrowly construed and strictly applied in order to discourage litigants from making repetitive arguments on the same issues that have been thoroughly considered by the court."); *St. Paul Fire and Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd.*, 976 F. Supp. 198 (S.D.N.Y. 1996) ("To avoid repetitive arguments on issues already considered fully by the court, rules governing reargument are narrowly construed and strictly applied."); *In re Cyclobenzaprine Hydrochloride Extended-Release Capsule Patent Litigation*, 2012 WL 892910 at *3 (D. Del. Mar. 15, 2012) (citing *Max's Seafood Caféx rel. Lou–Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) ("The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."); *Pa. ins. Guar. Ass'n v. Trabosh*, 812 F. Sup. 522 (E.D. Pa. 1992 ("Motions for reconsideration should be granted sparingly because of the interest in finality and conservation of scarce judicial resources."). The Proposed Intervenors have not—and cannot—demonstrate any of that here.

17. Importantly, the Proposed Intervenors cite no actions taken by J&J since the July 29 hearing to warrant this abrupt about-face on an express agreement reached in good faith and in open court. *See Merrell-National Laboratories, Inc.*, 579 F.2d at 791–92. Indeed, the House Letter attached as Exhibit A to their Discovery Motion was not only available to them in advance of the July 29 hearing, but was their opening salvo. *See* July 29 Hr'g Tr. at 11:1–8.

18. A likely explanation for the Proposed Intervenors' sudden pivot is that they have second thoughts about the strength of their Injunction Motion. But that is no excuse for revisiting

resolved issues and seeking what amounts to the same discovery they had agreed to abandon. The Court's schedule could not be more clear, especially given that discovery was expressly discussed during the conference and the Court did not order it in connection with adopting the parties' agreed schedule. *See* July 29 Hr'g Tr. at 12:7, 15:7–11.

19.     Simply put, the Proposed Intervenors are not entitled to discovery because the issue was addressed and resolved at the July 29 hearing and the schedule agreed to in open court does not provide for or contemplate discovery in connection with the Injunction Motion. An agreement this Court approved.

## **CONCLUSION**

20.     The expedited hearing and related briefing schedule—acceptable and agreed to by all parties and approved by the Court ***just last week***—provides a sufficient framework for both the parties and the Court to effectively resolve the issues regarding the Injunction Motion. Nothing has changed in the interim, nor have there been any new developments. Thus, the Motion to Shorten should be denied, as should the Discovery Motion.

Dated: August 6, 2021

Wilmington, Delaware

        /s/ *Patrick A. Jackson*
**FAEGRE DRINKER BIDDLE & REATH LLP**
Patrick A. Jackson (Del. Bar No. 4976)
222 Delaware Ave., Ste. 1410
Wilmington, Delaware 19801
Telephone: (302) 467-4200
Facsimile: (302) 651-7701
Patrick.Jackson@faegredrinker.com

-and-

**WEIL, GOTSHAL & MANGES LLP**
Diane P. Sullivan (admitted *pro hac vice*)
Gary T. Holtzer
Ronit J. Berkovich (admitted *pro hac vice*)
Theodore E. Tsekerides *(*admitted *pro hac vice)*
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
*Attorneys for Johnson & Johnson and Johnson & Johnson Consumer Inc.*