## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| IMERYS TALC AMERICA, INC., et al., | Case No. 19-10289 (LSS) |
| Debtors. | (Jointly Administered) |
| IMERYS TALC AMERICA, INC., and IMERYS TALC VERMONT, INC. | |
| Plaintiffs, | |
| vs. | Adv. No. 21-51006 (LSS) |
| JOHNSON & JOHNSON and JOHNSON & JOHNSON CONSUMER INC., | |
| Defendants. | |

## BENCH RULING GRANTING MOTION TO INTERVENE
## AND DENYING MOTION FOR PRELIMINARY INJUNCTION[1]

Debtors filed this bankruptcy case on February 13, 2019, about two and one-half years ago. A disclosure statement was approved last January and a plan has been solicited. A confirmation hearing is currently scheduled to commence in November.

Approximately four weeks ago, on July 27, Imerys Talc America, Inc. and Imerys Talc Vermont, Inc. filed a Complaint against Johnson & Johnson and Johnson & Johnson Consumer Inc. I will refer to defendants collectively as J&J. The Complaint is a straight-forward contract action. It sounds in breach of contract and declaratory judgment regarding J&J's alleged obligations to indemnify and/or defend litigation under a series of contracts in connection with product liability claims arising out of the sale of talc-containing products by J&J. The contracts were executed between 1989 and 2011 and Debtors assert that J&J breached its obligations prepetition. Debtors also seek declaratory judgments that Debtors have no obligations to J&J under the same agreements. These claims are contained in Thirteen Causes of Action.

---

[1] This Bench Ruling was read in court on August 26, 2021. Headings were added to delineate sections of the ruling.

On the same day the Complaint was filed, the Official Committee of Tort Claimants and the FCR sought leave to intervene. They both assert they can intervene as of right under section 1109 of the Bankruptcy Code and as of right and permissively under Bankruptcy Rule 7024, which applies Civil Rule of Procedure 24 to adversary proceedings.

In the early hours of the next day, the Committee and the FCR, *but not Debtors*, filed a motion for a temporary restraining order and preliminary injunction. By the Motion, the Committee and the FCR seek to enjoin J&J from using a divisive merger or other corporate transaction to "separate themselves from the indemnification obligations owed to Debtors."

I addressed the hearing on the TRO on July 28. At that time, I gave J&J 24 hours to let me know its position on the TRO. On July 29, J&J announced that it was willing to maintain the status quo and go straight to a hearing on a preliminary injunction. The hearing on the preliminary injunction was set for August 24.

Since then, the Committee, the FCR and J&J have briefed the intervention motion and the preliminary injunction motion. A review of the briefing shows, as I stated at oral argument, that the Committee's and the FCR's position is somewhat of a moving target. Even after argument, it's still somewhat unclear the legal theory underpinning movant's request.

Further, movants attach as Exhibit C to their Reply Brief on the preliminary injunction motion, a *Complaint in Intervention* which includes averments and relief not found in Debtors' Complaint. The averments (contained in eight new paragraphs and made on information and belief), are that J&J is contemplating a divisive merger as reported by reputable news organizations. The *Complaint in Intervention* also contains an additional count—the Fourteenth Cause of Action—by which Movants seek a declaration that J&J's allocation or transfer of its contractual indemnity liabilities in a manner that separates them from J&J's assets violates the automatic stay.

I heard argument on both motions on August 24. I am granting the motion to intervene with respect to Debtors' Complaint and, at this time, I am not putting any limitations on that intervention by way of discovery or otherwise. However, I am not permitting the filing of the *Complaint in Intervention*. As to the motion for preliminary injunction, I am denying that request. Movants do not have standing to bring this request and even if they do, I conclude that a divisive merger as averred in the *Complaint in Intervention* does not violate the automatic stay.

**The Motion to Intervene and Standing**

I will address the Motion to Intervene and the standing issues together because they overlap.

J&J did not object to the Motion to Intervene as it relates to Debtors' Complaint. Instead, J&J argues that I should limit the scope of Movant's intervention in two ways. First, I should preclude Movants from pursuing their own discovery or otherwise expanding the scope of Debtors' Complaint. Second, J&J specifically argues that I should limit Movants to the claims in Debtors' Complaint—in essence, not permit the filing of the *Complaint in Intervention.*

As J&J does not object to Movants' intervention in the adversary proceeding on Debtors' Complaint, I will grant that request. I will not at this time determine what discovery might be appropriate. I will consider any requests that cannot be resolved as they arise.

As to J&J's second objection—that Movants are attempting to expand the scope of Debtors' Complaint with their *Complaint in Intervention*—J&J points out that Debtors' Complaint does not contain any request for injunctive relief nor does it contain any averments regarding any type of merger transaction or any impact any merger transaction may have on the Thirteen Causes of Action in the Complaint. J&J also points out that the Committee has not sought derivative standing to plead the additional Fourteenth Cause of Action or to pursue injunctive relief.

The Committee and the FCR object to any restriction on their participation in the adversary proceeding, including the filing of the Preliminary Injunction Motion. In their submissions, Movants argue that the Committee and the FCR are adverse to both Debtors and Defendants in the thousands of personal injury talc cases that "are the very basis for the adversary complaint's indemnity claims" and so they should be able to intervene, and presumably pursue injunctive relief separate from Debtors. At argument, Committee counsel suggested that the Committee and FCR somehow have interests different than Debtors with respect to the contract claims against J&J. Thus, they think it is irrelevant that Debtors have not joined in the injunctive relief nor consented to it. Finally, at the hearing, the Committee's standing argument focused on the automatic stay. Movants argued, relying on two cases in a footnote in a reply brief, that creditors' committees can move to enforce the automatic stay because the automatic stay protects creditors as well as debtors.

*The Law*

Standing is not an incidental or peripheral requirement. A litigant must have Constitutional standing to bring a complaint. Here the Complaint was filed by Debtors. Debtors clearly have standing to assert their contract actions against J&J. Debtors assert a concrete injury that can be traced to the averments in the Complaint and can be redressed by a favorable decision in the adversary proceeding.

Given that J&J has not objected to Movants' intervention on Debtors' Complaint, Movants can piggyback on Debtors' standing. But, as to the new Fourteenth Cause of Action in the *Complaint in Intervention* and request for preliminary injunctive relief, Movants have no back to cling to. Movants' have no constitutional standing independent of Debtors. Their views of intervention, their adversity to Debtors and their standing in this adversary proceeding are incorrect.

Section 1109 of the Bankruptcy Code provides that a committee is a party in interest and may be heard on any issue in the case. The FCR is also a party in interest. Section 1109 can also be used as a reason for permitting intervention in adversary proceedings a là *Marin Motor Oil*, 682 F.2d 445 (3d Cir. 1982). And, section 1109 can be used as an additional basis for intervention under Rule 7024. But, section 1109 does not excuse the requirement for a committee, or any other party, to obtain derivative standing when seeking to separately enforce a debtor's claims and causes of action. Movants cite no case standing for that proposition and do not respond at all to the *Cybergenics* argument raised by J&J.

Moreover, as to the claims asserted in Debtors' Complaint – that is breach of contract claims against J&J—the Committee and the FCR have no separate injury or interest. These are Debtors' claims. Neither the Committee, the FCR, nor any individual creditor has any direct interest in the J&J indemnity claims. Creditors have personal injury claims against Debtors and they may have their separate claims against J&J, but, again, they have no direct interest in Debtors' contractual claims against J&J. Having different strategies does not create a legal interest.

Movants also argued at the hearing that the exigency of the situation justifies any failure to seek derivative standing. But, derivative standing is not automatic. At a hearing on a request for derivative standing, Movants would have to prove that they made a demand on Debtors, that Debtors unjustifiably refused that demand and that the claim they seek to bring is colorable. Of course, Debtors could have filed the Fourteenth Cause of Action and the motion for preliminary injunction without permission. They did not do so. Exigency alone, therefore, cannot excuse standing.

So, that leaves Movants' argument that Movants have standing to enforce the automatic stay. Setting aside the fact that Movants did not bring a stand-alone motion, Movants' argument relies on two cases both of which are distinguishable. *In re Shubh Hotels Pittsburgh, LLC*, 2011 WL 7109364 (W.D. Pa. May 16, 2011) is simply a case in which a creditors' committee filed a motion to enforce the stay. But, the issue of whether the committee had standing to do so was not a subject of the decision.

In *re Killmer*, 501 B.R. 208 (Bankr. S.D.N.Y. 2013), Judge Morris concluded that she saw no reason why a creditor who has been harmed by a stay violation should not be able to seek redress. In ruling, she noted the automatic stay protects both debtors and creditors as it ensures all claims against a debtor will be brought in one forum and creditors will not race to the courthouse to seek payment of their claims. She also observed that if the conduct at issue—which had already occurred—violated the stay, it was void *ab initio*.

While I see no reason to disagree with Judge Morris, that scenario is not before me. Movants are not being directly harmed by any prospective violation of the automatic stay. If anyone faces the prospect of harm, it is Debtors. Further, the creditors' interest Judge Morris sought to vindicate is not present here. J&J is not racing to the courthouse on its claims against Debtors.

Movants have the burden to prove they have standing to proceed with a complaint when standing is challenged. Based on their arguments and the cases they have cited, Movants have not met that burden with respect to the Fourteenth Cause of Action in the *Complaint in Intervention* and request for Preliminary Injunctive Relief.


### *Request for Preliminary Injunction*

My decision on standing could end my ruling, but I will address one other issue. If I'm wrong and Movants have standing to seek to enforce the automatic stay on a stand-alone basis, I do not see that the use of the Texas Business Organizations Code in the way described in the filings amounts to a violation of the automatic stay.

Based on reporting, Movants contend that J&J is preparing to divide its assets and liabilities into two separate companies in the same manner described in Judge Whitley's recent decision in *DBMP*. In *DBMP*, ninety-seven percent of the assets as well as the operating liabilities of Old Certainteed were allocated to New Certainteed. Three percent of Old Certainteed's assets and all of its asbestos liabilities were allocated to DBMP. Also placed in DBMP was a Funding Agreement from New Certainteed by which New Certainteed agreed to provide DBMP with the funds necessary to administer a bankruptcy proceeding and to satisfy all asbestos related liabilities transferred to DBMP in connection with a 524(g) trust. DBMP was promptly put in bankruptcy.

Like in *DBMP*, Movants contend that J&J will effect a divisive merger under the Texas Business Organizations Code to strand Debtors' claims for indemnification in a new entity that has no assets, or fewer assets than J&J currently has. Movants argue that the stay violation is the creation of a different contract counter party, but more importantly, the creation of impediments to collection. That harm – impediment to collection—runs throughout Movants' filings, and arguments in court.

Section 362(a)(3) provides that the filing of a bankruptcy case operates as a stay of any act to exercise control over property of the estate. When questioned at the hearing, counsel described the property right at issue variously as "a right to seek recoveries against a very solvent corporation with significant assets" or "*debtors' expectation*, looking at the contract rights, that its indemnity obligations *would be easily satisfied* by the value of J&J." And, when discussing the proposed Order Movants seek, Counsel said that it's a two prong issue: "it's *not* a transfer of the contract rights to a new entity standalone. It might be separating the assets and the liabilities, but what we proposed in our order is that it has to be both."

Debtors' expectations about recoveries are not a property right nor property of the estate. Neither are J&J's assets property of the estate. And, J&J's allocation of its assets is not an act to exercise control over property of the estate. Under the posited scenario, Debtors' contract rights are not being expunged. If there are sufficient assets put into the new bankruptcy-bound entity, Debtors will be able to recover on any judgment they may receive in the future. If not, there appear to be many avenues of relief.

Movants' filings had little analysis of the issue by analogy or otherwise. Upon questioning, Counsel stated (not surprisingly) that there were no cases directly on point, that is, no rulings on whether a divisive merger under the Texas Business Organizations Code in the manner Movants posit is a violation of the automatic stay. Counsel argued that the closest analogous case is the Second Circuit's decision in *In re Prudential Lines, Inc.*, 928 F.2d 565 (2d Cir. 1991). There, the Court upheld a bankruptcy court injunction prohibiting a non-debtor parent company that filed consolidated tax returns with its subsidiary from taking a worthless stock deduction that would destroy its debtor/subsidiary's net operating losses. In so ruling the Court recognized that the parent and subsidiary had an intertwined interest and that the non-debtor's action with respect to that interest would have the legal effect of diminishing or eliminating property of the estate. *Prudential Lines* has been criticized. And, the Seventh Circuit limited it to its facts in *In re UAL Corp.*, 412 F.3d 775 (7th Cir. 2005). In *UAL*, Judge Easterbrook questioned whether or not tax benefits are property of the estate, but in any event, he concluded that an investor's sale of stock cannot be an act to exercise control over a debtor's interest in net operating carryforwards.

As I stated at argument, I am not sure I agree with *Prudential Lines*, but, if that decision is correct, I would join the Seventh Circuit in limiting *Prudential Lines* to its facts. Here, Debtor's right to indemnification from J&J is a simple contract right. J&J's assets are its assets. And, there is no intertwined interest such as in *Prudential Lines*.

Finally, let me spend one minute on the bigger picture, which supports the conclusion I reach today. The automatic stay is one of the fundamental protections afforded debtors under the bankruptcy laws. Its purpose is "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor." *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir.1982). As some courts have said, the stay is a shield meant to help a debtor qua debtor and not a sword to be wielded against creditors. In this adversary proceeding, Imerys Talc America, Inc. and Imerys Talc Vermont, Inc. do not have their debtor qua debtor hats on. They have their creditor hats on.

Debtors assert a breach of contract claim against J&J. To borrow a phrase from Judge Eric Frank, debtors are not "super creditors." They have no greater rights than other creditors of third parties. Here, Imerys Talc America, Inc. and Imerys Talc Vermont, Inc. have all of the remedies of a creditor with respect to any actions J&J may take in the future

as well as any current relief available to creditors.  But, Movants cannot extend those creditor rights.

By denying the preliminary injunction motion, I am not opining on the use of divisive mergers under the Texas Business Organizations Code.  I am only ruling that the Committee and the FCR have not met their burden to show that the purported future action by J&J as described in the *Complaint in Intervention* is a violation of the automatic stay.